[Criminal No. 623.  Filed December 10, 1925.]

[241 Pac. 511.]

## WILLIAM A. LAWRENCE, Appellant, v. STATE. Respondent.

1. CRIMINAL LAW—ERROR ON WHICH TO PREDICATE REVERSAL MUST BE PREJUDICIAL OR RESULT IN "MISCARRIAGE OF JUSTICE."—In view of Constitution, Article 6, section 22, error in a criminal case must be such as might be prejudicial or result in "miscarriage of justice," in order to predicate reversal thereon, and mere fact of error does not raise conclusive presumption of prejudice, but court must examine evidence and ascertain whether error in fact was injurious.

2. CONSTITUTIONAL LAW—CONSTITUTIONAL PROVISIONS LIBERALLY CONSTRUED.—Constitutional provisions will be liberally construed, in order to carry out their purpose.

3. CRIMINAL LAW—IMPROPER PREPARATION OF JURY LIST HELD NOT PREJUDICIAL ERROR REQUIRING REVERSAL.—Improper preparation of jury list, by failure to place nearly two-thirds of qualified jurors of county upon it, *held* not prejudicial error, requiring reversal, where it appeared that jurors who actually tried case were fair and impartial, legally qualified to serve, and drawn in approved manner.

---

See (1) 17 **C. J.**, p. 368, n. 5; 36 **C. J.**, p. 959, n. 9.   (2) 12 **C. J.**, p. 700, n. 74, p. 701, n. 80; 17 **C. J.**, p. 287, n. 61, p. 368, n. 5, p. 369, n. 7.   (3) 17 **C. J.**, p. 289, n. 18.

On petition for rehearing of appeal from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge.  Petition denied.

For former opinion, see *ante,* p. 247, 240 Pac. 863.

Mr. L. C. McNabb, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. Frank J. Duffy and Mr. Earl Anderson, Assistant

---

2.   See 6 **R. C. L.** 49.
3.   See 16 **R. C. L.** 234.

Attorneys General, and Mr. Arthur T. La Prade, County Attorney, for the State.

LOCKWOOD, J.—This matter is before the court on a petition for rehearing, and we have examined the petition and brief in support thereof most carefully. Counsel for defendant has presented the matter with the most painstaking care and with great earnestness. No point has been raised presenting any issue materially different from those submitted to us at the original hearing, but the importance of a correct understanding by the bar of the state of the general rule laid down by us is such that, in view of the apparent misconception of its scope and basis, both by counsel for defendant and others whose familiarity with the case is based apparently on newspaper report, instead of following our usual custom when no new matter is presented on a petition of this kind, of merely overruling it, with no reasons assigned, we think it advisable to restate the fundamental principles back of our decision.

Summing up the argument of counsel for the defendant, it amounts to this: That, in a criminal case, any departure from the method of procedure laid down by the law or statute, no matter how clearly it may appear that it did not affect and could not have affected in any manner the verdict of the jury and the judgment of the court, will cause the case to be reversed and remanded for a new trial, on the ground that any error is conclusively presumed to be prejudicial.

We are aware that in many states, and particularly among the older decisions, the principle upheld by counsel is approved, but, as we also stated, this rule grew out of a state of facts which has long since passed away. In our opinion, law should not be, and is not, a fixed and rigid system, confining the growth

of society to the channels laid down long ages since. Nor are its rules in our enlightened day and generation like the "law of the Medes and the Persians, which changeth not." To the contrary, it is the glory of the common law that it can and does change to fit changing conditions as they arise. As we said before, the reason for the doctrine of rigid construction having departed, the rule might well be abrogated by the courts which enunciated it in the first place, on the ground that different conditions require a different rule. We need not and do not, however, base our decision on this point, for the people, the highest authority in our state, speaking through their Constitution, have said:

"The pleadings and proceedings in criminal causes in the courts shall be as provided by law. No cause shall be reversed for technical error in pleading or proceedings when upon the whole case it shall appear that substantial justice has been done." Article 6, § 22, Constitution of the State of Arizona.

If this provision has any meaning whatever, it is a distinct and positive repudiation of the doctrine contended for by counsel for defendant.

During the last quarter of a century there has been a growing feeling among the people of the different states that our criminal procedure was needlessly technical, and that the reversal of convictions in cases where substantial justice has been done, on account of some immaterial mistake in points of pleading or procedure, was defeating the entire purpose of our penal laws. For this reason there have been many statutes and some constitutional provisions adopted, particularly in the western states, in an attempt to remedy the undoubted evil. These provisions differ in their language, but all have the same purpose, viz., that courts should look to the substance rather than the form, and that if, after a fair and impartial trial,

a defendant were convicted for the violation of a penal statute, the case should not be reversed because of the failure to observe some rule of pleading or procedure which in no way affected the final result of the case, or caused a miscarriage of justice.

The state of California in 1911 placed the following clause in its Constitution:

"No judgment shall be set aside, or new trial granted, in any criminal case on the ground of misdirection of the jury or the improper admission or rejection of evidence, or for error in any matter of pleading or procedure, unless, after an examination of the entire cause including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." Article 6, § 4½.

This provision, while somewhat different and more precise in its language, undoubtedly is of the same general character as article 6, section 22, *supra,* of our Constitution. It should always be remembered that constitutional provisions particularly are given a liberal construction in order to carry out the purpose for which they were designed. *Laird* v. *Sims,* 16 Ariz. 521, L. R. A. 1915F, 519, 147 Pac. 738; 12 C. J. 700.

The opinion of the Supreme Court of California, in the case of *People* v. *O'Bryan,* 165 Cal. 63, 64, 130 Pac. 1042–1045, states the purpose and effect of provisions like these so well that we quote extensively therefrom:

"The general purpose of the amendment is plain. . . . Having no jurisdiction in matters of fact, the court in which the appeal was pending was bound to apply the doctrine that prejudice was presumed to follow from substantial error.

"In not a few instances this limitation upon the power of courts produced results which were unsatisfactory and which seemed to hamper the state in its efforts for a prompt and effective enforcement of the

29 Ariz.—21

prohibitions and penalties of its penal laws. It sometimes became necessary for the courts of appeal and for this court to grant new trials to defendants on account of technical errors or omissions, even though a review of the evidence, if such review could legally have been undertaken, would have shown that the guilt of the accused had been established beyond question and by means of a procedure which was substantially fair and just. It was to avoid the necessity for such results that the amendment in question was proposed and adopted. . . . ''

The serious question for consideration is what the phrase ''miscarriage of justice,'' which is merely our ''substantial justice'' stated in a different form, means. The California court, in discussing this question, says:

''The phrase is a general one, and has not as yet acquired a precise meaning. . . . In the case of Peter Meyer, 1 Criminal Appeal Cases, 10, 12, the Lord Chief Justice said that the provision 'enables the court to go behind technical slips and do substantial justice.' We have no doubt that in a general way this fairly states the purpose of our own constitutional provision. It does not, however, afford an all-embracing test or definition for determining just what will constitute a miscarriage of justice. . . . It is as difficult to frame a definition of 'miscarriage of justice' which shall be 'at once perspicuous, comprehensive and satisfactory,' as it has been to thus define the term 'due process of law,' of which Mr. Justice Miller said in *Davidson* v. *New Orleans,* 96 U. S. 97, 24 L. Ed. 616, 'There is wisdom in the ascertaining of the intent and application of such an important phrase in the federal Constitution by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded.'
. . .

''This much, however, we think may be safely said: Section 4½ of article 6 of our Constitution must be given at least the effect of abrogating the old rule that prejudice is presumed from any error of law.

Where error is shown, it is the duty of the court to examine the evidence and ascertain from such examination whether the error did or did not in fact work any injury. The mere fact of error does not make out a *prima facie* case for reversal which must be overcome by a clear showing that no injury could have resulted. On the other hand, we do not understand that the amendment in question was designed to repeal or abrogate the guaranties accorded persons accused of crime by other parts of the same Constitution. . . . For example, if a court should undertake to deny to a defendant charged with a felony the right of trial by jury, . . . or, if a defendant, after having been once acquitted, should be again brought to trial and thereupon convicted, in disregard of his plea that he had been once in jeopardy, it would hardly be suggested that, because he, was in fact guilty, no 'miscarriage of justice' had occurred.

''But it does not follow that every invasion of even a constitutional right necessarily requires a reversal. . . . The mere fact that the assignment of error is based upon a provision of the Constitution is not conclusive. *The final test is the opinion of the appellate court upon the result of the error.* [Italics ours.] No doubt this view requires the court, to some extent, to weigh the evidence, and form conclusions upon its weight, a function which heretofore has been reserved for the jury. But it cannot be doubted that the legislators . . . and the electors . . . intended to put upon the courts the performance of just that function. We are not substituted for the jury. We are not to determine, as an original inquiry, the question of the defendant's guilt or innocence. But, where the jury has found him guilty, we must, upon a review of the entire record, decide whether, in our judgment any error committed has led to the verdict which was reached. If it appears to our satisfaction that the result was just, and that it would have been reached if the error had not been committed, a new trial is not to be ordered. . . . ''

And in determining whether substantial justice has been done, as is stated in *People* v. *Fleming*, 166 Cal. 357, 371, Ann. Cas. 1915B, 881, 136 Pac. 291–297:

"Under this amendment to our Constitution, an appellate court must necessarily be vested with a large discretion in determining the effect of errors, and each case must depend upon its own circumstances. It is the 'opinion' of the court based upon a full consideration of the particular record that is to control upon the question whether the error complained of has resulted in a miscarriage of justice."

Following this rule, so logical in its reasoning, so clearly expressed, and so just in its conclusions as to the meaning of constitutional provisions like ours, we have determined this particular case.

It is true the error of which the most serious complaint is made, to wit, the failure of the board of supervisors to place upon the jury list the names of nearly two-thirds of the qualified jurors of Maricopa county is a plain failure to follow the statute. The jurors who actually tried the case, however, appear affirmatively from the record to have been fair and impartial. They were all legally qualified to serve, were drawn in accord with every form of law, from a jury list certified by the right authority, and prepared properly, except that negligently and intentionally, but with no evil purpose, the list did not contain all the names which should have appeared thereon.

In no way that we can conceive, under the circumstances set forth in this particular record, could this error have affected in the slightest degree the verdict which was reached, except upon the theory it is always possible, even though no reason appear therefor, that jury B. might not return the same verdict as jury A. To hold that such a possibility raises a presumption of prejudice would be to make an absurdity of the Constitution.

Counsel for defendant sets up many hypothetical "men of straw," and promptly proceeds to knock

them down, showing that, if, under various suggested states of facts, we should hold no prejudicial error existed, we would be violating the fundamental principles of law. The answer to that is that no such states of facts as suggested by counsel appear in this record, and if, when such conditions are shown to us, we decline to reverse a case, it will then be time for him to complain.

We have been thus lengthy in our opinion, for the reason that a correct understanding of the general principle which we have actually laid down in this case is, in our judgment, of vital importance to the proper administration of the criminal law of Arizona, and, unless it be carefully explained by us, other counsel in different cases may draw a wrong conclusion of the actual nature and extent of our decision.

What we have said in regard to the one error discussed applies equally well to the remaining points raised by counsel for defendant. For the foregoing reasons, the petition for rehearing is denied.

McALISTER, C. J., and ROSS, J., concur.