[Criminal No. 751. Filed March 7, 1932.]

[8 Pac. (2d) 772.]

DONOCIANO COMANCHO, Appellant, v. STATE, Respondent.

Mr. George H. Rawlins, for Appellant.

Mr. K. Berry Peterson, Attorney General, Mr. Renz L. Jennings, Assistant Attorney General, and Mr. Rouland W. Hill, County Attorney, for the State.

ROSS, J.—Appellant was informed against for murder, committed .at Claypool, Gila county, on November 9, 1930, by shooting to death Julio (or Rogilio) Valencia. He was tried in February, 1931,

and the jury found him guilty and fixed his punishment at life imprisonment. He has appealed and assigns but one reason therefor. He claims the court committed error to his prejudice in permitting the state to prove over his objections that in December, 1928, he killed one Manuel Presiada or Perada, a matter, as he contends, entirely unrelated to the killing of Valencia and in no way relevant thereto. It will be necessary, in order that an understanding of the point made may be had, to relate some of the more salient facts of the case.

The appellant and deceased had been friends from 1922. They were partners in bootlegging during 1926 and 1927, and, as we infer from the evidence, carried on their illicit business in and around the towns of Miami and Globe, Gila county. In 1928 appellant was convicted for violating the Federal Prohibition Law and sentenced to one year's imprisonment in the county jail of Yuma county. After the expiration of his term he returned to Globe, and shortly thereafter he and deceased ceased to be friends. In the latter part of July or early part of August, 1930, in a conversation with Deputy Sheriff Fred Pascoe, appellant said when he was sent to the Yuma county jail he and Valencia had around four thousand dollars in bank and two good stills, and that when he came back Valencia would not give him any of the money and neither of the stills; that Valencia also wanted to run him out of his house (a house owned by them jointly, and in which both were living); that as long as Valencia let him alone he would let Valencia alone, but, if Valencia ever crossed his trail again, it would be just too bad. Four or five days before the killing appellant told George Cole, a deputy sheriff of Gila county, that he had been having trouble with Valencia; that Valencia was bootlegging and he wanted him put in jail.

The deceased and his family, consisting of his wife and three small children, and the appellant lived in the same house, the appellant in what is referred to in the evidence as the downstairs or basement and the Valencia family in the upstairs. The killing occurred in the yard of these premises, about six o'clock in the afternoon, and was not witnessed by anyone except Manuela Dominguez Valencia, wife of deceased, and she did not see or hear the beginning of the trouble. She was in the house working when she heard a shot. She ran to the place whence she thought the shot came and saw her husband lying on the ground, with appellant standing over him. She asked appellant not to shoot Valencia any more, whereupon she said "he told me to shut up and if not he would shoot me too," and then shot Valencia again. This witness testified that Valencia and appellant had trouble over the house in which they were living about four months prior to the killing; that her husband wanted to buy or sell and appellant would do neither. She expressed the opinion that the disagreement about the house was the beginning of their troubles.

Appellant testifying in his own behalf said deceased abused him, called him vile names, wanted to know what he was doing in his (Valencia's) property, said he was going to kill him and made a demonstration "to draw," and that he shot him in self-defense. A careful examination of the deceased's body disclosed that he had no weapon whatever except a small pen-knife in his pocket. Appellant fled the scene and was apprehended three days later in an underground cave, some miles away, in which he had hidden.

The testimony which appellant claims was incompetent, irrelevant, and prejudicial was given by Mrs. Valencia in chief and was, in substance, as follows: She testified that in December, 1928, appellant came to the Valencia home about one o'clock in the morning and asked her husband to get up out of bed, said he

had killed a boy by the name of Manuel Perada and wanted her husband to go with him and help throw him away or burn him up. Before this testimony was admitted the county attorney stated its purpose to be to show that the appellant was never prosecuted for killing Perada; that he had confided the particulars of such killing to Valencia while they were friends; that after appellant returned from Yuma he went to the officers and tried to have Valencia put in jail; that they were no longer friendly, and that appellant became afraid that Valencia was going to tell the particulars of the Perada killing, and that, in order to save himself from being prosecuted for such killing, he killed Valencia the first chance he had. "That," said the county attorney, "is the State's theory of it and the testimony is only relevant for that one purpose, to show the motive for the defendant killing this deceased."

Generally speaking, proof that the accused has been guilty of other offenses than the one for which he is being tried is not competent. However, if such proof explains or accounts for the crime for which the accused is on trial, it is relevant and therefore competent. *Crowell* v. *State,* 15 Ariz. 66, 136 Pac. 279; 8 R. C. L. 198, §§ 194–197. The general rule excludes proof of extraneous crimes upon the fundamental ground that, when a person is put upon trial for an offense, he is to be convicted, if at all, by evidence which shows he is guilty of that offense, and not by evidence showing him guilty of other offenses wholly unconnected with the one charged. This has always been the policy of the common law. Thereunder persons are tried for specific crimes and not upon their criminal records. The information or indictment is notice of what the accused is expected to meet, and, if therein he is charged with murdering A, he is not expected, not prepared, nor required, to meet evidence that shows, or tends to show, that at another

time and place he killed B, unless the two homicides have some connection or relation.

If the accused did in fact kill Valencia, to whom he had told of his killing Perada, to keep Valencia from being a witness against him for such killing, proof of the killing of Perada by the accused would have been relevant to show motive for the killing of Valencia. But how are we going to determine whether the accused killed Valencia to put him out of the way as a witness? Not by conjecture, or guess, or doubtful inference. There is not a scintilla of evidence in the record that Valencia had ever by word or action threatened or expressed an intention to have appellant arrested and prosecuted for the killing of Perada, or that he believed or knew that such killing was unjustified, or that he had knowledge of it that others did not have. If Valencia was in possession of facts showing the killing of Perada to be unlawful, and if he had in some manner signified a wish to have appellant prosecuted therefor, and a willingness to testify against him, these might have offered a reason for appellant's killing Valencia, but it was not shown that what Valencia knew of the Perada killing was different from what the general public, including the peace officers, knew, and neither is it shown that Valencia ever expressed a desire to have appellant tried therefor. If appellant's motive in killing Valencia was to put him out of the way as a witness, it is passing strange that he did not at the same time kill Mrs. Valencia, for according to the record appellant told her everything that he told Valencia about the Perada killing.

From the evidence, there was no necessity, as we see it, to speculate as to why appellant killed Valencia. His reason or motive for doing so is manifest. He told Deputy Sheriff Pascoe that Valencia would not give him any of the bootleg money they had banked, or either of the stills, and that Valencia wanted

to run him away from his home, and that, "if Valencia ever crossed his trail again, it would be just too bad." Four or five days before the killing he tried to have Deputy Sheriff Cole put Valencia in jail for bootlegging, and stated that he and Valencia were having trouble.

It seems to us to be a plain case of two persons falling out over the division of their illegal gains from an illicit business and one of them either from a fancied or real injury done him by the other kills him. The Perada killing was not shown to have been the motivating cause for the killing of Valencia. It was just evidence that appellant had some time before killed another person, and, if the competent evidence introduced did not overwhelmingly show appellant guilty of the highest degree of the crime, we would feel compelled to reverse the judgment for the error in its admission. It is apparent appellant's contention that he killed Valencia in self-defense was a mere pretext or pretense. Valencia made the fatal mistake of "again" crossing appellant's trail.

For another reason, we are satisfied that the objectionable evidence was harmless. The appellant met this evidence with the showing that he went to Valencia's home and got Valencia to go with him to the peace officers of Gila county for the purpose of interpreting for him the facts concerning the killing of Perada; that Valencia did go with appellant to such officers and did interpret such facts; that after an investigation thereof, upon the motion of the county attorney of Gila county, the committing magistrate dismissed the charge "for lack of evidence." From all that appears in the record a full and complete disclosure of the facts of that case was made, not only to Valencia, but to the peace officers. In this situation, the jury would hardly conclude that the appellant's motive in killing Valencia was to destroy him as a witness, when there was left possessed of the

same knowledge Valencia's wife, the sheriff's office, and, perhaps, the general public of Gila county. Had the jury believed that appellant's act against Valencia was taken to get rid of him as an important witness in another murder case, doubtless the punishment would have been capital instead of life. There was no evidence before the jury that would have justified a verdict for a lower degree of the crime or for manslaughter.

Under the interpretation we have given section 22 of article 6 of the state Constitution, the mere fact of error does not raise a conclusive presumption of prejudice. It is our duty, notwithstanding error, to examine the evidence and ascertain therefrom whether the error was in fact injurious. *Lawrence* v. *State,* 29 Ariz. 318, 241 Pac. 511. From an examination of the evidence, our opinion is that "the result was just, and that it would have been reached if the error had not been committed." *Lawrence* v. *State, supra,* quoted from *People* v. *O'Bryan,* 165 Cal. 55, 130 Pac. 1042.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.