560 P.2d 1211

**STATE of Arizona, Appellee,**

v.

**Robert Joseph MARAHRENS, Appellant.**

**No. 3612.**

Supreme Court of Arizona,
En Banc.

Feb. 1, 1977.

Holohan, J., dissented and filed opinion in which Struckmeyer, V. C. J., concurred.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III and Georgia Butcher Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Terry J. Adams, Deputy Public Defender, Phoenix, for appellant.

HAYS, Justice.

The appellant, Robert Marahrens, and his codefendant, Melvin Snyder, were charged

with burglary, second degree, and both were convicted thereof by a jury. Appellant, charged also with a prior felony to enhance his punishment, was sentenced to not less than two nor more than three years. From the judgment and sentence he appeals, and we have jurisdiction pursuant to 17A A.R.S. Supreme Court Rules, rule 47(e)(5).

The incident which gave rise to this conviction began when a Lucky's grocery store detective named Steve Boswell observed appellant and Snyder removing price tags from some hams and beef briskets in the meat display cases in the store. Boswell watched them leave through two different doors, then followed them in his car. They stopped at a bar for approximately forty-five minutes, left and proceeded to a second Lucky's grocery store, with Boswell still following.

At the second Lucky's store, appellant and Snyder separated. Snyder appeared to be going into the liquor department; appellant went directly into the meat department. Boswell followed appellant, saw him present a price tag to the meat clerk, and heard him tell the clerk that his wife had purchased a ham earlier, that it was too fatty and that he wanted a refund for the ham. Boswell watched appellant receive a refund slip from the meat clerk, obtain a refund for a little over ten dollars from the cashier, and then rejoin Snyder in the liquor department.

Appellant purchased some beer, he and Snyder left, followed by Boswell, stopped at a Circle K, and then went to another bar. It was while they were inside the second bar that Boswell had the police contacted. Several officers, some from Scottsdale and some from Tempe, arrived. Boswell and the policemen went in and Boswell pointed the two out. The two were placed under arrest for burglary, second degree, and then Boswell searched them. He found nothing on the appellant, but found several price tags on Snyder, including a price tag from a Bayless grocery store. It was introduced at trial and identified as a "meat price tag for a ham for the value of $7.17."

After the police had placed appellant and Snyder in their car and left, Boswell proceeded to search the car the codefendants had been traveling in. He found more Lucky's price tags, which were also introduced into evidence.

Appellant testified in his own behalf. The substance of his testimony and defense was that he formed the intent to take the money *after* he had entered the second Lucky's grocery store.

The issues raised in this appeal are:

1. Did the trial court err in failing to suppress the items seized from the automobile in which the codefendants were riding?
2. Did the trial court err in failing to grant appellant's motion for a directed verdict and judgment of acquittal?
3. Were the trial court's instructions erroneous?
4. Was it reversible error to allow the introduction into evidence of the Bayless price tag?

## FAILURE TO SUPPRESS

Appellant challenges only the introduction of exhibits one and six, which were parts of price tags from a Lucky's store found in the car occupied by him and Snyder during the period Boswell followed and observed them. The assertion is that Boswell was acting as a police agent, and that therefore a search warrant should have been obtained before the car was searched.

█ We do not meet the merits of this contention because appellant has waived his right to object to the introduction of this evidence by failing to make the proper motion to suppress pursuant to 17 A.R.S., Rules of Criminal Procedure, rules 16.1(b) and 16.1(c). *See State v. Piper*, 113 Ariz. 390, 555 P.2d 636 (1976).

The waiver issue was reached and argued in the briefs. Appellant argues that the objection was preserved by defense counsel by checking the appropriate boxes on the Omnibus Hearing form, and by raising the

objection at trial. Appellant submits that, because codefendant's counsel made a pretrial motion to suppress, this eliminates the appellant's duty to do so. We reject this contention.

Codefendants' legal interests may vary, as may the treatment of their various motions. That is why, as here, they are frequently assigned separate counsel. What evidence may be introduced against one defendant may be inadmissible against his codefendant. That is one of the many reasons why our rules allow for severance of trials of codefendants. It is not logical, nor would it be ethically proper, for defense counsel to rely on a codefendant's pretrial motions.

Although counsel representing codefendants may join one another's motions or objections affirmatively, that is not what occurred here. What did transpire was that appellant marked the Omnibus Hearing form, showing some general objection to disclosures with regard to "the existence, procedure used to obtain, and results of all searches and seizures pertaining to the case. . . . " Also, under the heading "Issues Which Will Be Raised in the Case" the hearing form reads:

"The parties hereby notify the court and each other of *their intention* to raise the following issues in this case: (Check motions *which will be made* in box of party *which will make* the motion. . . . )" (emphasis added).

Appellant checked the box which would have permitted him to move to suppress evidence based on the unlawfulness of a search or seizure.

However, no such motion was ever made, nor did appellant ever affirmatively join in his codefendant's pretrial motions to suppress. In fact, during the hearing on the codefendant's motion to suppress, the following exchange took place between the prosecutor and appellant's counsel:

Prosecutor: " . . . For the record, I don't believe the defendant Marahrens has joined in this motion to suppress.

Defense Counsel: "Nothing was found on my client."

The distinct impression given is that defense counsel purposefully avoided joining the motion to suppress. Whether or not there was tactical purpose in this course we cannot say. We can say, without fear of contradiction, that appellant never made his own motion to suppress any evidence whatever, with the exception of the motion in limine discussed *infra*, nor did he ever affirmatively join in his codefendant's pretrial motion to suppress. He therefore waived the right, at trial and on appeal, to object to the introduction of the evidence, whether legally seized or not. 17 A.R.S., Rules of Criminal Procedure, rule 16.1(c). The trial court did not err, therefore, in failing to suppress state's exhibits 1 and 6 herein.

## FAILURE TO DIRECT VERDICT OF ACQUITTAL

Next, appellant alleges that at the close of the state's case and at the close of all the evidence, his motions for a directed verdict and judgment of acquittal should have been granted. He contends that the evidence was insufficient to show the second essential element of burglary, second degree, that being the intent to commit a felony or theft, formed before the initial entry into the store. We disagree.

The specific felonious intent to commit burglary may be established by circumstantial evidence. *State v. Evans*, 110 Ariz. 407, 519 P.2d 1148 (1974). There was more than sufficient circumstantial evidence to show intent: appellant was observed removing price tags from meat which he didn't buy; there was evidence he and his codefendant left the first Lucky's store through separate exits; after one stop appellant proceeded to a second Lucky's store, where he went directly to the meat department and sought the fraudulent refund; appellant lied when he told the meat clerk his wife had purchased a fatty ham, since appellant had no wife; appellant

signed a false name to the refund slip, and Boswell retrieved several price tags which were torn up and thrown out of the car window as he was following the two suspects. This pattern showed sufficient circumstantial evidence of intent before entry to commit a theft in the second Lucky's store. The state's burden, in this respect, was met. The trial court did not err in failing to grant appellant's motion for a directed verdict and judgment of acquittal.

## ERRONEOUS INSTRUCTIONS

■ Appellant contends that the trial court's instructions were erroneous in two respects: they failed to give a clear instruction with regard to specific felonious intent, and they gave a confusing instruction with regard to general intent. The two instructions objected to are taken directly from the Recommended Arizona Jury Instructions (RAJI): RAJI, Criminal Standard 4 and RAJI, Crimes 12. When the court announced to counsel, in chambers, its intention to give these instructions, no objection whatever was raised by defense counsel, nor was any raised during trial. Absent fundamental error, an objection not made to the trial court cannot be argued on appeal for the first time. *State v. Goldsmith,* 112 Ariz. 399, 542 P.2d 1098 (1975). Since both instructions were verbatim from the RAJI, and no objections made, we find no reversible error.

## ADMISSION OF BAYLESS PRICE TAG

The final contention of appellant is that the introduction of the Bayless price tag, found on the person of his codefendant, suggests a bad act other than the crime charged. A motion in limine, made by both codefendants, to prevent the Bayless tag from being admitted, was denied.

■ Appellant correctly points out that the evidentiary rule in Arizona is that evidence of the commission by accused of other offenses entirely distinct and independent of that for which he is on trial is neither relevant nor admissible. *State v. Martinez,*

67 Ariz. 389, 198 P.2d 115 (1948). There are many exceptions to this rule, however, and where the evidence of another crime or bad act will show motive, intent, absence of mistake or accident, common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime on trial, it is admissible. *State v. Mitchell,* 112 Ariz. 592, 545 P.2d 49 (1976).

The state argues that the Bayless tag fits into either the "intent/motive" exception, or the "common scheme or plan" exception. The state fails to point out, however, that there is an additional requirement for these exceptions to operate:

"Before evidence of the commission of other crimes by accused is admitted, the trial court should satisfy itself that the evidence substantially establishes the other crimes, accused's connection therewith, and their connection with the offense for which accused is being tried.

.     .     .     .     .

"Evidence of a vague and uncertain character . . . should not be admitted under any pretense whatever; nor is . . . mere suspicion, or proof of a suspicious circumstance, sufficient." 22A C.J.S. Criminal Law § 690.

■ More succinctly, the Arizona rule is that before the evidence of the separate crime or offense may be admitted, there must be evidence of that other crime substantial enough to take that case to a jury, *State v. Mitchell, supra,* although it need not be proof beyond a reasonable doubt. *State v. Hughes,* 102 Ariz. 118, 426 P.2d 386 (1967). A Bayless meat price tag, in and of itself, is insufficient proof of anything to take to a jury. Mere possession of a meat price tag shows no offense; in the context of this fact situation, it is merely a "suspicious circumstance." 22A C.J.S., *supra.*

■ A case very much in point is *State v. Washington,* 103 Ariz. 605, 447 P.2d 863

(1968). There, the state introduced, against a defendant charged with forgery, evidence that he had tried to cash another check at another store earlier on the day of the crime for which he was being charged. The state, however, failed to produce any evidence the earlier check was forged. The Arizona Supreme Court found the introduction of that evidence, therefore, to be reversible error. We said:

"To infer that the first check was a forgery when in fact it may have been genuine, and from that inference draw the other inferences as to the subject check is to permit a conviction entirely on inference." *State v. Washington*, 103 Ariz. at 608, 447 P.2d at 866.

Similarly, to infer that a meat price tag, found on a codefendant, is related to a scheme of theft, and from that further infer that the subject crime is part of that scheme, would be to permit a conviction entirely on inference. It was error to admit the Bayless price tag into evidence.

The issue of intent and when it was formed was before the jury. In view thereof, we cannot say beyond a reasonable doubt that the impermissible introduction of this evidence did not contribute to the jury's verdict in this case. We therefore reverse and remand for a new trial.

CAMERON, C. J., and GORDON, J., concur.

HOLOHAN, Justice, dissenting.

The method by which the crime was committed is set forth in the majority opinion. The meat price tag was the essential means by which the criminal scheme was accomplished. Other price tags in the possession of the appellant or his codefendant were clearly relevant as evidence of the means, instrument, or device by which the crime was accomplished.

The fact that the Bayless price tag suggests a bad act is not the issue. It has served to cloud the real issue which is the question of relevancy. If evidence is admissible for any purpose the fact that it discloses or suggests incidentally incompetent matters does not exclude it. *Lawrence v. State*, 29 Ariz. 247, 240 P. 863, *rehearing denied*, 29 Ariz. 318, 241 P. 511, *certiorari denied*, 269 U.S. 585, 46 S.Ct. 201, 70 L.Ed. 425; *State v. Vidalez*, 89 Ariz. 215, 360 P.2d 224 (1961).

Evidence showing the possession of an instrument or means by which the crime was committed has long been recognized as admissible. 22A C.J.S. *Criminal Law* § 611; 1 Wigmore, *Evidence*, § 83 (3d ed. 1940). Evidence admissible under this rule is most often burglary tools. *See* cases annotated in 143 A.L.R. 1194. However, the types of instruments are by no means limited to burglary tools. The items range from abortion instruments, *People v. Stone*, 89 Cal. App.2d 853, 202 P.2d 333 (1949), to weapons, *Morton v. U.S.*, 183 F.2d 844 (D.C. Cir., 1950).

The fact that the price tag was from a Bayless market and the crime involved a Lucky market does not change the relevancy of the Bayless price tag. The items are sufficiently similar so that the possession of one is competent evidence of the knowledge and intent of the appellant and his codefendant. There is no requirement for the item to have been used in the crime charged. The *Indiana Supreme Court in England v. State*, 249 Ind. 446, 233 N.E.2d 168 (1968) which involved the charge of passing a forged instrument, upheld the admissibility of two other forged checks which had been found in the defendant's automobile. That court rejected the defendant's claim that because the checks were not used in the crime for which he was charged they were not admissible. The Indiana Supreme Court quoted with approval the rule from 29 Am.Jur.2d, *Evidence*, § 288 which states in part:

"It is a well-established principle of criminal law that evidence of guilt found upon a person under legal arrest for a crime may be used in evidence against him. Whatever is found upon his person or in his possession which was a part of the means by which he accomplished the

crime, whether an instrument, device, or token, is legitimate evidence for the prosecution and may be taken from him and used for that purpose . . . ."

The Indiana Court of Appeals was confronted with a situation similar to that in *England* in *Reid v. State*, 298 N.E.2d 480 (Ind.App.1973). Reid was charged with uttering a forged check. At the time of his arrest Reid was found to be in possession of other similar checks. The Indiana Court of Appeals noted:

"It is our opinion that the trial court did not commit error when it permitted the introduction of other checks found in Reid's possession at the time he was arrested.

"Reid's objection to these checks is that they were not relevant to the question of his guilt. The answer is that the checks found in his possession were similar to the uttered check and were therefore evidence of Reid's knowledge that the uttered check was false and of his intent to defraud. These similar checks could be considered part of the means by which he accomplished the crime." *Reid v. State*, 298 N.E.2d 483.

The Bayless meat tag was also admissible on the question of intent. One of the necessary elements to be proved was whether the appellant formed the criminal intent before or after he entered the grocery store. All of the tags, including the Bayless tag, were relevant evidence from which the jury could infer a prior scheme or plan which establishes the intent to defraud prior to his entry into the market. The question which would occur to a reasonable juror is: Why would the appellant and his partner keep or have a Bayless tag in their possession unless it was part of a scheme or plan to defraud?

In my judgment the admission of the Bayless price tag was not error, and I therefore dissent from the position of the majority. I would affirm the conviction.

STRUCKMEYER, V. C. J., concurs.