778 P.2d 1185

**STATE of Arizona, Appellee,**

v.

**Henry Daniel GUERRA, Appellant.**

**No. CR–87–0082–AP.**

Supreme Court of Arizona,
En Banc.

June 13, 1989.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhauser and Paul J. McMurdie, Asst. Attys. Gen., Phoenix, for appellee.

John M. Antieau, Phoenix, for appellant.

GORDON, Chief Justice.

Defendant, Henry Daniel Guerra, appeals from his conviction for premeditated first-degree murder. The trial court sentenced Guerra to life imprisonment without the possibility of parole for 25 years. This Court has jurisdiction pursuant to Ariz. Const. Art. 6, § 5(3) and A.R.S. §§ 13–4031, –4033, and –4035.

## BACKGROUND

Early in the morning on September 30, 1986, Guerra stabbed George McMahon to death. The events leading to the murder took place in the neighborhood surrounding a cul-de-sac on West Christy Drive in Phoenix. Entering the cul-de-sac, victim McMahon's house is on the left, witness Peter McGillan's house is on the right, and witness Ben Spinelli's house is straight ahead. The Schneider house is between Spinelli's and McMahon's. An alley completely surrounds the cul-de-sac.

During various times from July 1984 through August 1986, Guerra lived with the Spinelli family. He overstayed his welcome, however, and in August 1986, Mr. Spinelli told Guerra to stay away from the house and his daughter, Guerra's former girlfriend. Despite these orders, Guerra secretly lived in the Spinelli family's camper parked in their backyard.

The night of September 28, 1986, McMahon caught Guerra stealing gas from the Schneider's car. McMahon confronted Guerra, took his high school ID card, and told him to wait outside while he called the police. Guerra left before the police arrived. McMahon discussed the incident with Spinelli.

On September 29, Spinelli confronted Guerra in a parking lot and urged him to turn himself in. Guerra refused and ran away. That evening, Guerra visited with neighborhood teenagers. He stated to several of them that he was going to "get back at" or "get even with" Spinelli and McMahon.

Later that night, Guerra and his friend, Barton Cox, went to Cox's house and changed into camouflage clothing. Guerra armed himself with a "Rambo" knife and a ball and chain weapon (mace) that he nicknamed his "perpetrator." One of the teenagers overheard Guerra ask Cox if he had "the gun." When Cox said no, Guerra glared at him. Cox then went into his house for a few minutes and returned.

Guerra and Cox proceeded to the alley surrounding the cul-de-sac. Guerra claimed they went to retrieve some of his clothing from the Spinellis' camper and to play some pranks on Mr. Spinelli. While Cox waited in the alley, Guerra sneaked into the Spinellis' yard and tied a rope from their garage door to a car.

Meanwhile, Peter McGillan, standing outside with his friend, Paul Sandusky, heard noises that sounded like rocks landing in the cul-de-sac. Moments later, McMahon came across the cul-de-sac and told them someone was throwing rocks at his house from the alley. He asked Sandusky and McGillan to "walk the alley" with him.

In the alley, they found Cox hiding in the bushes. Cox and McMahon got into an argument and McMahon, an off-duty detention officer, handcuffed Cox. Cox was struggling, so McMahon sat on him while McGillan went to call the police. Sandusky remained at the scene, holding a flashlight. Guerra heard the struggle, left Spinelli's house and approached McMahon and Cox. McMahon was kneeling on Cox's back when Guerra arrived. Cox started to squirm and McMahon and Guerra scuffled. McMahon was still kneeling on Cox when Guerra stabbed him once, piercing his heart.

A grand jury indicted Guerra and Cox on two counts: first-degree murder and conspiracy to commit first-degree murder. Near the close of the prosecutor's case, the trial judge dismissed the conspiracy charge. The jury acquitted Cox and found

Guerra guilty of premeditated first-degree murder.

## DISCUSSION

On appeal, Guerra raises numerous issues, which we discuss separately.

### A. *Evidence Supporting Premeditated Murder Charge*

#### 1. *Double jeopardy*

Guerra argues that once the court dismissed the conspiracy count, the constitutional prohibition against double jeopardy and the principle of collateral estoppel precluded use of the same evidence to support the premeditated murder charge. Guerra cites *Turner v. Arkansas*, 407 U.S. 366, 92 S.Ct. 2096, 32 L.Ed.2d 798 (1972), *Harris v. Washington*, 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971), and *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

We disagree. The cases cited by Guerra are distinguishable. In *Turner*, a victim was robbed and murdered. A jury tried and acquitted defendant of felony murder charges. After the acquittal, the State obtained an indictment and attempted to prosecute the defendant for robbery. The Supreme Court held that the attempted second prosecution violated collateral estoppel and double jeopardy. 407 U.S. at 368–70, 92 S.Ct. at 2098–99, 32 L.Ed.2d at 800–01.

In *Harris*, someone bombed a house, killing three people. A jury acquitted defendant of the murder of one victim. After trial, authorities immediately rearrested defendant on informations charging him with the murder of the other two victims. The Supreme Court held that under the principles of collateral estoppel, the State could not retry the defendant because the new charges involved the same issues decided in the previous case. 404 U.S. at 56–57, 92 S.Ct. at 184, 30 L.Ed.2d at 214–15.

In *Ashe*, a group of robbers robbed six men gambling in a basement. The jury found defendant not guilty of one robbery, but later, the State tried and convicted defendant for robbing another gambler. The United States Supreme Court reversed the judgment, holding that collateral estop-

pel and double jeopardy principles prohibited another trial for the robbery. 397 U.S. at 445–47, 90 S.Ct. at 1195–96, 25 L.Ed.2d at 476–77. All of these cases involve an acquittal followed by attempted successive prosecutions. Guerra was prosecuted only once.

 The double jeopardy clause is not violated absent threat of either multiple punishment or successive prosecutions. *United States v. Wilson*, 420 U.S. 332, 344, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232, 236 (1975). The double jeopardy clause prevents the State from making repeated attempts to convict an individual for an offense. *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). Acquittals or dismissals of related charges within the same prosecution generally do not prohibit convictions on remaining charges. *State v. Clayton*, 109 Ariz. 587, 598, 514 P.2d 720, 731 (1973) (dismissal of premeditated murder count at conclusion of State's case did not prevent jurors from finding defendant guilty of felony murder). The trial court's dismissal of the conspiracy count did not preclude a guilty verdict on the premeditated murder count.

#### 2. *Using evidence of conspiracy to support murder charge*

Guerra claims that when the trial court entered acquittal on the conspiracy count, it should also have granted a mistrial on the premeditated murder count because the conspiracy evidence allegedly contaminated the trial. Guerra cites *State v. Marahrens*, 114 Ariz. 304, 560 P.2d 1211 (1977) and *State v. Washington*, 103 Ariz. 605, 447 P.2d 863 (1968).

We disagree. In both *Marahrens* and *Washington*, this Court held that it was reversible error for the State to introduce evidence of the defendant's possible involvement in unrelated crimes. *Marahrens*, 114 Ariz. at 307–08, 560 P.2d at 1214–15; *Washington*, 103 Ariz. at 608, 447 P.2d at 866. However, admitting evidence relating to the defendant's commission of other crimes does not always amount to reversible error. When dismissing the conspiracy count, the trial judge stated he believed

that "the evidence that is in, is in properly under various theories."

◼ We agree with the trial judge. The evidence relating to the conspiracy was also relevant to the premeditated murder charge and was admissible to show intent, premeditation, or to "complete the story of the crime," even though the evidence incidentally showed that Guerra committed other crimes. M. Udall & J. Livermore, *Law of Evidence* § 84 (1982). *State v. Chaney,* 141 Ariz. 295, 309–10, 686 P.2d 1265, 1279–80 (1984) (in murder trial, evidence that defendant committed a burglary and stole a truck admissible to complete the story of the crime).

3. *Sufficiency of evidence on premeditated murder charge*

Guerra contends that the evidence available to support the premeditated murder charge was insufficient to take to the jury and that the trial court should have entered a judgment of acquittal on the premeditation charge.

◼ When reviewing the sufficiency of the evidence, an appellate court does not reweigh the evidence to decide if it would reach the same conclusions as the trier of fact. *State v. Mincey,* 141 Ariz. 425, 432, 687 P.2d 1180, 1187, *cert. denied,* 469 U.S. 1040, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984); *State v. Brown,* 125 Ariz. 160, 162, 608 P.2d 299, 301 (1980). All evidence will be viewed in the light most favorable to sustaining the conviction and all reasonable inferences will be resolved against the defendant. *State v. Tison,* 129 Ariz. 546, 552, 633 P.2d 355, 361 (1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). If conflicts in evidence exist, the appellate court must resolve such conflicts in favor of sustaining the verdict and against the defendant. *State v. Girdler,* 138 Ariz. 482, 488, 675 P.2d 1301, 1307 (1983), *cert. denied,* 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 826 (1984). When a defendant challenges the sufficiency of the evidence, the court will affirm the conviction if there is "substantial evidence" to support the guilty verdict. *Tison,* 129

Ariz. at 552, 633 P.2d at 361. "Substantial evidence" means:

More than a scintilla and is such proof as a reasonable mind would employ to support the conclusion reached. It is of a character which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed. If reasonable men may fairly differ as to whether certain evidence establishes a fact in issue, then such evidence must be considered as substantial.

*Id.* at 553, 633 P.2d at 362. We believe the State presented sufficient evidence of premeditated murder. The trial court did not abuse its discretion in denying Guerra a judgment of acquittal.

◼ According to Guerra's own testimony, he went to the alley armed with a mace and a hunting knife, dressed in camouflage clothing, and planning to do some "pranks." While there, he overheard and witnessed the confrontation between McMahon and Cox. Aware of the volatile situation, Guerra, carrying his "perpetrator" and knife, walked a considerable distance down the alley to confront McMahon. We believe this provides substantial evidence to support a guilty verdict on premeditated murder. A reasonable mind could find that Guerra, even if he did not premeditate a murder before he went to the alley, had sufficient time to reflect and premeditate a murder after McMahon confronted Cox.

B. *Jury Instructions on Premeditation*

◼ Premeditation requires a length of time to permit reflection. A.R.S. § 13–1101(1). The trial judge instructed the jury as follows:

Premeditation means that the defendant's intention or knowledge existed before the killing long enough to permit reflection.

*The time for reflection need not be prolonged and there need be no appreciable space of time between the intention to kill unlawfully and the act of killing.*

*It may be as instantaneous as the successive thoughts of the human mind,*

however it must be longer than the time required to form the intent or knowledge that such conduct will cause death.

An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

(Emphasis added.)

The Recommended Arizona Jury Instructions do not contain the emphasized language. Guerra contends the additional language renders the instruction internally contradictory and nullifies the concept of premeditation. In particular, Guerra objects to the language indicating "there need be no appreciable space of time between the intention to kill unlawfully and the act of killing."

This Court previously approved jury instructions containing similar "no appreciable space of time" language. *E.g., State v. Moore,* 112 Ariz. 271, 540 P.2d 1252 (1975); *State v. Eisenstein,* 72 Ariz. 320, 235 P.2d 1011 (1951), *overruled on other grounds, State v. Hunter,* 136 Ariz. 45, 50, 664 P.2d 195, 200 (1983). The most recent decision approving such language is *State v. Magby,* 113 Ariz. 345, 554 P.2d 1272 (1976). This Court has not addressed "no appreciable space of time" language since 1976.

We believe a jury may be misled by an instruction placing undue emphasis on the rapidity with which premeditation can occur. *State v. Pittman,* 118 Ariz. 71, 75, 574 P.2d 1290, 1294 (1978). However, jury instructions must be considered as a whole. *State v. Richardson,* 110 Ariz. 48, 50, 514 P.2d 1236, 1238 (1973). A case will not be reversed because some isolated portion of an instruction might be misleading. *State v. Norgard,* 103 Ariz. 381, 383, 442 P.2d 544, 546 (1968). Although we have problems with the "no appreciable space of time" language, we find that the remaining portions of the instructions clarified the definition of premeditation. *See State v. Haas,* 138 Ariz. 413, 425, 675 P.2d 673, 685 (1983) (even if particular instruction misleading, other statements made by judge cured problem).

### C. *Motion for Mistrial Based on Prosecutor's Cross–Examination of Guerra.*

On direct examination, Guerra testified that he made the mace along with martial arts "Chinese stars" at his former employer's shop in Texas. He claimed that he made the weapons as novelty items and not to use as weapons against people.

During the prosecutor's cross-examination of Guerra, the following took place:

Q. And you said that you only—the only purpose, you testified yesterday, to making that mace was a novelty item. Is that what you testified yesterday?

A. Yes.

Q. In fact, didn't you use these maces on your chickens?

A. No.

At that point, the trial court denied defense counsel's motion for a mistrial. Shortly thereafter, the prosecutor asked:

Q. Mr. Guerra, you also said you made shiny Chinese stars?

A. I didn't say shiny but I did make Chinese stars....

Q. Now you say that you only threw these stars, you threw them only over the lunch hour at a wall which I guess was with the other employees, is that so?

A. Yes.

Q. In fact, didn't you throw them several times through the office window of Apache Barricade?

A. No.

The trial court then denied defense counsel's renewed motion for a mistrial. At the close of evidence, defense counsel moved for a judgment of acquittal and again renewed her motion for a mistrial. The judge heard arguments and took the matter under advisement.

Later, the judge ruled that it was error for the prosecutor to go into the chickens and stars issues, but found that the error was not prejudicial:

I think it was done in good faith. In the context of this case, the macing the chicken is not as prejudicial as it would be in any other case. In this case we

have the mace by itself is pretty bizarre and prejudicial....

I don't think it affected substantial rights of defendant Guerra and I don't think the verdict, there is any likelihood of the verdict being affected by those two questions and answers.

Guerra argues that the prosecutor's questioning amounted to improper cross-examination by insinuation and improper references to prior bad acts. Contrary to the trial court's determination Guerra further maintains that the prosecutor's improper conduct was prejudicial.

■■■ We find that any error involved in the questioning was not prejudicial for the following reasons:

First, the main issue at trial was Guerra's state of mind at the time of the killing. Guerra admitted on the witness stand that he stabbed and killed McMahon, but denied that he premeditated the murder. Guerra and the neighborhood teenagers provided substantial testimony regarding Guerra's actions and statements that were indicative of his state of mind. The chickens and stars incidents took place in Texas long before the murder. Thus, they were collateral matters that had little bearing on the crucial issue at trial. *See State v. Grijalva*, 137 Ariz. 10, 14, 667 P.2d 1336, 1340 (1983) (reversal not required unless any resulting prejudice makes it reasonably probable that verdict would have been different).

Second, Guerra himself introduced the issues by testifying that he made the mace and stars merely to have as novelty items. By bringing the issue up, Guerra invited the prosecutor to ask further questions.

Finally, when the prosecutor asked Guerra if he had used the mace on the chickens or thrown stars through windows, Guerra responded "No." The prosecutor did not challenge Guerra's denial or pursue the matter further. *State v. Madsen*, 125 Ariz. 346, 350, 609 P.2d 1046, 1050 (1980), *cert. denied*, 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (no prejudice when prosecutor asked question in good faith and upon defendant's denial did not pursue the matter

further, because denial itself may cure any error or prejudice).

For the above reasons, under these facts, we find that any error in the questioning did not warrant a mistrial.

### D. *Comment on Guerra's Silence*

On the morning after his arrest, Detective Rea and Detective Raines questioned Guerra. Guerra waived his *Miranda* rights and claimed he was in the alley playing war games with Cox and Marco Lopez, a student at Moon Valley High School. Guerra stated that Marco Lopez killed McMahon. Detective Rea left the room to call Moon Valley High School to try to locate Marco Lopez. When Moon Valley High School officials reported they had no record of a Marco Lopez, Officer Rea returned and told Guerra he thought he was lying.

At the pretrial voluntariness hearing, Detective Rea testified that after confronting Guerra with the lie, Guerra asked for an attorney and questioning ceased. At trial, Detective Rea again described Guerra's statements in the interview. He did not mention, however, that the interview ended because Guerra requested an attorney.

At trial, Guerra told a different story. On both direct and cross-examination, he admitted he lied in the original interview with Detectives Rea and Raines. During cross-examination, the following exchange took place:

Q. [Prosecutor]: And then did Detective Rea tell you that he did not believe you?

A. [Guerra]: Yes, he did.

Q. [Prosecutor]: And then you didn't talk to him anymore, is that correct?

THE COURT: If you are at a stopping point, we can recess for lunch.

[Prosecutor]: I didn't mean to just stop.

Whereupon, the prosecutor asked other questions and Guerra never answered the question about his silence.

During his closing argument, the prosecutor remarked:

Detective Rea, after giving the Miranda rights and Mr. Guerra voluntarily makes some admissions, confession, and then Mr. Rea, Detective Rea says to him after he goes and checks out about this alleged Marco Lopez—you are lying, and there is no more talk by Mr. Guerra.

The admission of Mr. Guerra is not that they were playing war games but that they were playing hide-and-seek, that he lied and he told the truth.

Later, the prosecutor made the following statement about Mr. Sandusky's testimony:

[He] told most of these facts to Detective Chaney and he was in a state of shock.

He just saw a brutal, violent, bloody murder in a dark alley where the only weapon obvious was this omnibus [sic] mace—people dressed in camouflage, Cox resisting to the fullest.

He was in shock and he testified, and it is an interesting parallel—if he didn't remember every little detail immediately after being interviewed by Detective Chaney, it does seem peculiar by contrast that Mr. Guerra had very little to say to you originally on September 30, and so much to say to you—

At that point, co-defendant Cox's counsel interrupted, approached the bench, and stated, "I would like to reserve my objection." The court allowed him to do so and instructed the prosecutor to continue.

At the close of the prosecutor's argument, both Cox and Guerra moved for a mistrial based on the prosecutor's reference to Guerra's silence. The prosecutor claimed that he was not referring to Guerra's silence, but rather comparing Guerra's out-of-court and in-court statements. The judge ruled that the prosecutor's statement was more a comment on Guerra's silence than a comparison of statements. However, the error, assuming it was error, was harmless.

■ In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that the prosecution may not impeach a defendant by referring to the defendant's decision to remain silent after receiving *Miranda* warnings. The policy behind this rule is *Miranda* warnings carry an implicit assurance that silence will carry no penalty, and it would be fundamentally unfair and a violation of due process to allow the prosecution to use an arrested person's silence to impeach an explanation subsequently offered at trial. 426 U.S. at 618, 96 S.Ct. at 2245, 49 L.Ed.2d at 98. On the other hand, a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. If a defendant tells different stories during post-arrest questioning and at trial, the prosecution may properly inquire into the prior inconsistent statements, even though the prior statements involve "silence" insofar as they omit facts contained in the later story. *Anderson v. Charles*, 447 U.S. 404, 408–09, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222, 226–27 (1980).

■ This case presents a hybrid situation. Guerra received *Miranda* warnings, talked to the police for about forty-five minutes, and then ended the interview by requesting an attorney. In this situation, the prosecutor could properly comment on the inconsistency of the statements under *Anderson v. Charles*, but could not comment on Guerra's invocation of his *Miranda* rights under *Doyle v. Ohio*. Note, *Protecting Doyle Rights After Anderson v. Charles: The Problem of Partial Silence*, 69 Va.L Rev. 155 (1983).

■ We believe that the prosecutor improperly commented on Guerra's silence. In *State v. Routhier*, 137 Ariz. 90, 669 P.2d 68 (1983), the defendant made a partial statement and then invoked his *Miranda* rights. During cross-examination of the defendant, the prosecutor asked about certain information the defendant did not tell police in his partial statement. The defendant related that he had not given certain information because he first wanted to talk to an attorney. This Court held that the questioning violated the defendant's rights. In *Routhier*, the error was not harmless beyond a reasonable doubt. 137 Ariz. at 95–96, 669 P.2d at 73–74.

An improper comment on defendant's silence may be harmless error. *United States v. Schmitt,* 794 F.2d 555, 559 (10th Cir.1986); *Phelps v. Duckworth,* 772 F.2d 1410, 1413 (7th Cir.1985); *United States v. Cummiskey,* 728 F.2d 200, 204 (3d Cir.1984); *Meeks v. Havener,* 545 F.2d 9, 10 (6th Cir.1976); *United States v. Wycoff,* 545 F.2d 679 (9th Cir.1976); *State v. Bowie,* 119 Ariz. 336, 341, 580 P.2d 1190, 1195 (1978); *State v. Shing,* 109 Ariz. 361, 365, 509 P.2d 698, 702 (1973); *State v. Calhoun,* 115 Ariz. 115, 117–18, 563 P.2d 914, 916–17 (App.1977).

We believe the prosecutor's errors were harmless. When the prosecutor mentioned Guerra's silence on cross-examination, Guerra never answered the question and the judge distracted the jury with his interruption to plan the lunch break.

The prosecutor directed his first comment during closing argument at Guerra's lie during the interview with Detective Rea. The comment was harmless because Guerra freely admitted during both direct and cross-examination that he lied to Detective Rea. The prosecutor's second comment that Guerra had very little to say was harmless for the same reason. Also, the second comment was more of a comparison between Guerra and Sandusky's memories than a comment on Guerra's silence.

Furthermore, all three instances were harmless because Guerra testified at trial that he stabbed and killed McMahon. Under the facts of this case, we can say beyond a reasonable doubt that the error did not contribute to the verdict. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967); *State v. Shing,* 109 Ariz. 361, 365, 509 P.2d 698, 702 (1973).

We searched the record for fundamental error according to the mandate of A.R.S. § 13–4035. We have found none and affirm defendant's conviction and sentence.

FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.

HOLOHAN, J., participated in this matter but retired prior to the filing of this opinion.

CORCORAN, J., did not participate in the determination of this matter.