NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

MARIO CRUZ, *Appellant*.

No. 1 CA-CR 18-0010
FILED 12-20-2018

Appeal from the Superior Court in Maricopa County
No. CR 2014-000876-001
The Honorable Michael W. Kemp, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Office of the Legal Advocate, Phoenix
By Andrew C. Marcy
*Counsel for Appellant*

Mario Cruz, Florence
Appellant

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Jon W. Thompson joined.

**B R O W N**, Judge:

¶1        Defendant Mario Cruz appeals his convictions and sentences for two counts of first-degree felony murder and one count of attempted sale or transport of marijuana.  Defense counsel filed a brief in compliance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), advising us that after searching the record on appeal, he found no meritorious grounds for reversal.  Defendant was given the opportunity to file a supplemental brief but did not do so.[1]  We now review the entire record for reversible error, *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999), viewing the facts in the light most favorable to sustaining the conviction and resolving all reasonable inferences against Cruz, *State v. Guerra*, 161 Ariz. 289, 293 (1989).

¶2        In 2003, police were dispatched to Cruz's home in response to a report of a gunshot victim.  After Cruz went to the hospital for treatment, officers became aware that Cruz's injuries might be relevant to a homicide investigation related to an apartment complex gun fight that had occurred several hours earlier.  When questioned, Cruz gave inconsistent answers to police about his presence and involvement in the gun fight.  Despite this inconsistency, due to several administrative matters, including an extensive backlog in the Phoenix crime lab, police pursued no further action in the case until March 2013, when Detective Schira interviewed Cruz.  Following this interview, the State indicted Cruz on two counts of first-degree felony murder and one count of attempted sale or transport of marijuana. The following evidence was presented at trial.

¶3        Shortly after midnight on November 19, 2003, police responded to a report of shots fired at an apartment complex in Phoenix.  When they arrived, officers observed K.W. and S.C. lying dead on the floor as well as multiple bales of a substance they believed to be marijuana inside the apartment.  The evidence suggested K.W. and S.C. died trying to take

---

[1]        Cruz filed a letter with this court on July 5, 2018, but it contains no legal arguments and does not identify any areas of the record for review.

the marijuana by force because they were armed, they were carrying zip ties, and they possessed only a relatively small amount of money. Sergeant Buscher, who has extensive experience and training relating to drug-trafficking organizations, opined that those planning on robbing drugs typically equip themselves this way. Subsequent investigation determined each bale was in fact marijuana and that, combined, their gross weight exceeded 300 pounds.

¶4        Aside from its large quantity, other evidence indicated the marijuana was for sale, including a scale; cellophane wrap; a marijuana cigarette; duct tape; a box cutter; a piece of paper with handwritten numbers appearing to represent weighted measurements; a spiral notebook containing names, phone numbers, and dollar amounts; notes seemingly calculating the value the marijuana would be sold for; and loose amounts of marijuana found throughout the apartment. Sergeant Buscher opined such items were commonplace at locations used to stage drug transactions to, for instance, help sellers keep track of inventory sold, allow buyers to ascertain the drug's quality, and repackage the marijuana for transport. The scene also comported with the expert's testimony that drug traffickers typically stage deals at locations in their control, because Cruz's brother-in-law owned the apartments and the front door was deadbolted when police arrived.

¶5        The evidence also demonstrated Cruz's personal involvement in the attempted drug deal. In at least two of his proffered explanations to police, Cruz admitted to being shot at this apartment complex on the relevant date. Cruz's thumbprint was found on a beer can located inside the apartment. Sergeant Buscher testified that, in his experience, a drug trafficking organization would not allow someone to be present during a drug sale unless they had personal involvement in the deal. Furthermore, on November 18th and 19th, Cruz had the cellphone he shared with his girlfriend at the time. That number called S.C.'s cell number 14 times between 2:08 p.m. and 9:56 p.m. on November 18th. All 14 calls were brief, with none lasting longer than three minutes. This high frequency of calls in the hours before the deal was to take place was consistent with Sergeant Buscher's testimony that S.C. was likely trying to trick the dealers into believing he and K.W. were legitimate buyers.

¶6        In addition, the apartment's rear window was bloodied and pushed out and an eyewitness told police he had seen four men, including a heavyset man with a noticeable limp, fleeing eastbound through the alleyway behind the window. Starting outside the window, police followed a trail of blood leading eastbound that ultimately terminated at a

phone booth outside of a store. Cruz not only matched the witness's description of this heavyset man, but also called his girlfriend from this payphone after the shooting. Furthermore, in the morning hours of November 19th, Cruz was hospitalized with gunshot wounds both in his legs and lower abdomen. While at the hospital, doctors removed a .40 caliber bullet from his right calf, and a .40 caliber handgun was found at the apartment. Police also found a large plastic bag, not unlike those found in the apartment, inside Cruz's truck that contained marijuana. Finally, a small paper removed from his clothes at the hospital, using numbers consistent with the amount of marijuana found at the scene, appeared to calculate his share of the would-be transaction.

¶7        The jury found Cruz guilty on each of the three counts. The court imposed concurrent sentences of 3.5 years for the attempted sale of marijuana and life in prison with the possibility of parole after 25 years for the murder counts, with presentence incarceration credit of 1,730 days. Cruz timely appealed.

¶8        After a thorough review of the record, we find no reversible error. *Clark*, 196 Ariz. at 541, ¶ 50. The record reflects Cruz either waived his right to be present under Arizona Rule of Criminal Procedure 9.1 or was present and represented by counsel at all critical stages of the proceedings.[2] The evidence presented supports the convictions, and the sentences imposed are within a permissible range. As far as the record reveals, these proceedings complied with Cruz's constitutional and statutory rights and the Arizona Rules of Criminal Procedure. Therefore, we affirm Cruz's convictions and resulting sentences.

¶9        Unless defense counsel finds an issue that may be appropriately submitted to the Arizona Supreme Court, his obligations are fulfilled once he informs Cruz of the outcome of this appeal and his future

---

[2]        Cruz was not present in the courtroom for many of the proceedings in this case. The record reflects Cruz either declined to attend altogether or was nonresponsive to efforts to secure his presence. When he was present at trial, Cruz either sat in a rear holding area or a different room where he could observe the proceedings by video. At sentencing, he was present in the courtroom.

options. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Cruz has 30 days from the date of this decision to proceed, if he wishes, with a pro per motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED:  AA