NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111[c], THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

PATRICK PETE PINA, *Appellant*.

No. 1 CA-CR 17-0252
FILED 1-30-2018

---

Appeal from the Superior Court in Maricopa County
No. CR 2016-109926-001
The Honorable Richard L. Nothwehr, Commissioner

**AFFIRMED AS MODIFIED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jeffrey L. Force
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Jennifer B. Campbell and Chief Judge Samuel A. Thumma joined.

---

**B R O W N**, Judge:

¶1        Patrick Pina appeals his conviction and sentence for sale of dangerous drugs, money laundering, possession of dangerous drugs, and possession of marijuana.  Counsel for Pina filed a brief in compliance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), advising that after searching the record on appeal, he found no meritorious grounds for reversal.  Pina was given the opportunity to file a supplemental brief but did not do so.

¶2        Our obligation is to review the entire record for reversible error.  *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999).  We view the facts in the light most favorable to sustaining the conviction and resolve all reasonable inferences against Pina.  *State v. Guerra*, 161 Ariz. 289, 293 (1989).

¶3        In March 2016, R.W. agreed to assist law enforcement in conducting a controlled drug purchase from Pina.  R.W. called Pina in the presence of law enforcement officers and arranged to purchase approximately 14 grams of methamphetamine for $200.  An officer gave R.W. the "buy money," which consisted of ten $20 bills.  Prior to making the buy, officers searched R.W.'s vehicle and his person to make sure he did not have any contraband in his possession.  Officers watched as R.W. then went inside Pina's residence and came out with a plastic baggie containing what was later confirmed as 13.7 grams of methamphetamine.

¶4        Based on the information obtained, officers applied for and received a warrant to search Pina's home, finding what was later confirmed to be marijuana, methamphetamine, scales, baggies, and pipes.  The officers also found a loaded 9 mm handgun in the master bedroom dresser along with Pina's Arizona identification card and a ledger listing names and dollar amounts.  Pina's cell phone was found, and it was later determined it was the phone R.W. had called to arrange the purchase.

¶5         Following Pina's arrest, officers found a total of $341 on Pina's person, including ten $20 bills in his front pocket. During a recorded interview, Pina admitted the marijuana and methamphetamine found in his residence belonged to him.

¶6         The jury found Pina guilty of sale of dangerous drugs, money laundering, possession of dangerous drugs, and possession of marijuana, and found the sale of dangerous drugs was committed for pecuniary gain. After a trial on Pina's historical priors, the superior court found that the State proved he was a category 3 offender, and because one of the historical priors involved the sale of methamphetamine, he was subject to sentencing under Arizona Revised Statutes section 13-3407(E). The court imposed an aggravated term of 17.5 calendar years' imprisonment for the sale of dangerous drugs, and presumptive terms of 11.25 years for money laundering, 10 years for possession of dangerous drugs, and 3.75 years for possession of marijuana. The court ordered the sentences be served concurrently and awarded 132 days of presentence incarceration credit.

¶7         Although Pina did not file a supplemental brief, through his attorney he identified the following "potential" issues: (1) the buy money was never registered; (2) his Sixth Amendment right to confront witnesses was violated; (3) the evidence shown to the jury was not field tested; (4) the State only played parts of his recorded interview; (5) the officer testified differently at trial than at the grand jury; and (6) trial counsel never objected to hearsay.

¶8         Concerning the "buy money," officers testified they did not have time to record the serial numbers of the ten $20 bills given for the buy. Instead, the testimony focused on the denominations given and recovered rather than the serial numbers of the bills. Next, it is unclear why Pina suggests his confrontation rights were violated. Presumably he is referring to R.W.'s absence from the trial. Although R.W. did not testify, nothing in the record suggests that Pina was precluded from calling R.W. as a witness. As to the lack of "field testing," though unnecessary, Officer Miller testified that "preliminary testing" of the substances was conducted, in addition to lab testing. Finally, the parties stipulated before trial to the omission of a portion of Pina's recorded interview.

¶9         Moreover, we will not address issues of ineffective assistance of counsel on direct appeal. *See State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002). Therefore, we will not address Pina's concerns about trial counsel's failure to impeach an officer on inconsistent statements, failure to object to hearsay evidence, or any other concern that is based on trial counsel's performance.

¶10 After a thorough review of the record, we find no reversible error, except for the sentencing error noted below. *See Clark*, 196 Ariz. at 541, ¶ 50. The superior court incorrectly calculated Pina's presentence incarceration credit. The record reveals that Pina was initially taken into custody on March 1, 2016, and released on bond on March 2, 2016. He was taken into custody again on December 2, 2016, and remained in custody until sentencing on April 14, 2017. Because Pina was incarcerated for 135 days prior to sentencing, he must be given credit for three additional days of presentence incarceration credit. We modify Pina's sentence accordingly. *See State v. Stevens*, 173 Ariz. 494, 495-96 (App. 1992) (correcting a miscalculation in presentence incarceration credit by modifying the sentence without remanding to the trial court).

¶11 The record reflects Pina was represented by counsel at all stages of the proceedings against him. He was present at all critical stages or voluntarily failed to appear. The evidence presented supports the convictions and the sentences imposed fall within the range permitted by law. As far as the record reveals, these proceedings were conducted in compliance with Pina's constitutional and statutory rights and the Arizona Rules of Criminal Procedure. Therefore, we affirm Pina's convictions and the resulting sentences, as modified.

¶12 Defense counsel's obligations pertaining to Pina's representation in this appeal have ended. *State v. Shattuck*, 140 Ariz. 582, 584 (1984). Counsel need do no more than inform Pina of the outcome of this appeal and his future options, unless, upon review, counsel finds "an issue appropriate for submission" to the Arizona Supreme Court by petition for review. *Id.* at 584-85. Pina has 30 days from the date of this decision to proceed, if he wishes, with a pro per petition for reconsideration or petition for review.

