NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

EDWARD MARTINEZ, JR., *Appellant*.

No. 1 CA-CR 18-0472
FILED 12-3-2019

Appeal from the Superior Court in Maricopa County
No. CR 2015-005794-001
The Honorable Douglas Gerlach, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Law Office of Kyle Green, Tempe
By Kyle Green
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

---

**C A M P B E L L**, Judge:

¶1        This appeal is presented to us pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Defense counsel has searched the record on appeal and advised that there are no meritorious grounds for reversal. Martinez was given the opportunity to file a supplemental brief but did not do so. Our obligation is to review the entire record for reversible error, *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999), viewing the evidence in the light most favorable to sustaining the convictions and resolving all reasonable inferences against Martinez, *State v. Guerra*, 161 Ariz. 289, 293 (1989). Having reviewed the entire record, we find no reversible error and affirm Martinez's convictions and sentences.

**BACKGROUND**

¶2        In March of 2012, H.H. was walking home from an evening party, intoxicated. Martinez approached her and began a conversation. Without invitation, Martinez followed her as she entered her apartment and asked for a drink of water or juice. After sitting on the couch talking, she asked him to leave because she needed to go to bed. In response, Martinez pushed her down onto the floor, pulled her pants halfway down, and forced her to have sexual intercourse. After Martinez let her up, she told him to get out of her house, and he left the apartment. Martinez returned to her apartment late at night a few days later. H.H. told him that she thought he was a rapist and told him to leave. Martinez left, but returned on New Year's Eve and H.H. had consensual sexual intercourse with Martinez. For a time after that, Martinez and H.H. had a consensual sexual relationship where Martinez would come over to her apartment late at night and wake her up for sex.

¶3        Eventually, H.H. said that she no longer wanted a sexual relationship with Martinez. He called her one evening and she told him that he could come to her apartment, but that she did not want to have sex with him. Upon arriving at her apartment, Martinez began to grope her in the kitchen. In order to dissuade his advances, H.H. moved away and walked

to her closet to show him some clothes. Martinez put his arms around her and pushed her into the closet, causing her to yell out for her neighbor. The police arrived at H.H.'s door to conduct a wellness check, and she told them that she was okay. After the police left, Martinez again tried to grope her. H.H. slapped him, and Martinez pinched and twisted her breast, pushing her down onto the bed. She got up and ran to the bathroom, and Martinez followed her. She told him to leave, but he refused. Martinez then dragged her back to the bed, jerked her pants down, forced her to have sexual intercourse, choked her by forcing her into performing oral sex, forced her to have anal sex, slapped her, and threatened to break a rib. Feigning walking to the shower, H.H. hurried to the door and ran to her neighbor's wearing only a shirt and proceeded to beat on the neighbor's door while screaming. Police arrived and conducted an interview with H.H. in her apartment where they found Martinez's bicycle and underwear. H.H. underwent a forensic nurse examination at a rape-crisis center and was later able to pick Martinez out of a photo-lineup.

¶4        On May 3, 2015, Martinez met the second victim, J.K., at a bus stop and offered her a ride in his car. Homeless and intoxicated, she accepted, believing that Martinez would take her to her mother's house as requested. Instead, Martinez drove her into a secluded alley where he forced her to perform oral sex and threatened to hurt her if she tried to escape. Next, promising her food and water, Martinez drove J.K. to his cousin's apartment where he again forced her to perform oral sex while he watched pornography. Martinez threatened to "break her face" if she did not comply with his sexual demands. After forcing J.K. to perform oral sex, Martinez forced her to have sexual intercourse, again under threat of violence. Afraid he was going to hurt her, J.K. jumped out the apartment window, completely naked, and ran away bleeding from cuts on her leg, arm, and back while screaming for help. Martinez fled before police arrived. Later that night, J.K. submitted to a forensic nurse examination and was able to pick Martinez out of a photo-lineup.

¶5        The next day, Martinez met the third victim, B.J., as she was walking home from the hospital after suffering a seizure. Martinez offered her a ride, which she accepted. When B.J. told Martinez that she was in pain, he offered her pills that made her sleepy and caused her to lose the ability to move her body. He then drove her to the parking lot of an apartment complex where he offered her methamphetamine. Martinez became aggressive, telling her to climb into the back seat. He then put his fingers inside her vagina against her will. Next, he got on top of her and forced her to have sexual intercourse, while choking her so that she was unable move

or breathe. When he was finished, Martinez pointed a gun at B.J. and told her to get out of his vehicle. Martinez threatened that if she told anyone, he would kill her. B.J. went to a friend's house and called the police. She later submitted to a forensic nurse examination and picked Martinez out of a photo-lineup.

¶6        The state proceeded to trial on seven counts of sexual assault, three counts of kidnapping, and one count of aggravated assault with a deadly weapon. In his defense, Martinez testified that each of the sexual encounters with the three victims was consensual.

¶7        After trial, the jury convicted the defendant on all counts. The superior court sentenced Martinez to the presumptive terms of seven years on counts 1, 2, 4, 5, 6, 8, and 9 (sexual assault); five years on counts 7 and 11 (kidnapping as to H.H. and B.J.); nine years and three months on count 3 (kidnapping as to J.K.); and three years and six months on count 12 (aggravated assault with a deadly weapon), all terms to run consecutively. Martinez received 1,153 days of pre-sentence incarceration credit on count 1. He timely appealed.

## DISCUSSION

¶8        As an initial matter, an opening brief must include argument that contains "appellant's contentions with supporting reasons for each contention, and with citations of legal authorities and appropriate references to the portions of the record on which the appellant relies." Ariz. R. Crim. P. 31.10(a)(7). "[O]pening briefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised." *State v. Carver*, 160 Ariz. 167, 175 (1989). The failure to argue a claim on appeal constitutes abandonment and waiver of that claim. *See id.*; *State v. Bolton*, 182 Ariz. 290, 298 (1995). "Merely mentioning an argument is not enough." *State v. Moody*, 208 Ariz. 424, 452, ¶ 101 n.9 (2004).

¶9        Martinez believes the superior court erred by (1) not allowing him to use the mental health records of a victim at trial, (2) not severing the charges for acts committed against the first victim, and (3) not releasing him on bond so that he could pursue his defense out of custody. However, other than merely mentioning the arguments at the end of his brief, he did not provide a factual justification for his arguments, citation to legal authority, or references to the record. Because Martinez failed to adequately identify and address the challenges, these issues would typically be waived on appeal.

¶10 And yet, this case comes to us in an appeal posture that heightens this court's responsibilities on review. This court has an independent obligation to conscientiously examine the entire record for arguable error. *Anders*, 386 U.S. 738, 744. The court's obligation necessarily includes the requirement that we consider the arguments presented, including the issues raised in counsel's *Anders* brief, however scant, to ensure they do not amount to a showing of an arguable issue.

¶11 This court has independently and thoroughly reviewed the record, and we find no arguable issues which could lead to a determination of reversible error. *Clark*, 196 Ariz. at 541, ¶ 50. The record reflects Martinez was present and represented by counsel at all critical stages of the proceedings against him. The evidence presented supports the convictions, and the sentences imposed fall within the range permitted by law. As far as the record reveals, these proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and Martinez's constitutional and statutory rights. We have read and considered counsel's brief and have reviewed the record for any arguable issues. *See Leon*, 104 Ariz. at 300. We find none.

## CONCLUSION

¶12 We affirm Martinez's convictions and sentences. After the filing of this decision, defense counsel's obligations pertaining to Martinez's representation in this appeal have ended. Defense counsel need do no more than inform Martinez of the outcome of this appeal and his future options, unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).

¶13 Martinez has 30 days from the date of this decision to proceed, if he wishes, with an *in propria persona* petition for review. On the court's own motion, we also grant Martinez 30 days from the date of this decision to file an *in propria persona* motion for reconsideration.

