NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GARY DANIEL STANDARD, *Appellant.*

No. 1 CA-CR 19-0120
FILED 12-17-2019

Appeal from the Superior Court in Maricopa County
CR2016-124649-001
The Honorable Dewain D. Fox, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Scott L. Boncoskey
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Michael J. Brown joined.

---

**C A M P B E L L**, Judge:

¶1        This appeal is presented to us pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Defense counsel has searched the record on appeal and advised us there are no meritorious grounds for reversal. Standard was given the opportunity to file a supplemental brief but did not do so. Our obligation is to review the entire record for reversible error, *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999), viewing the evidence in the light most favorable to sustaining the conviction and resolving all reasonable inferences against Standard. *State v. Guerra*, 161 Ariz. 289, 293 (1989).

**BACKGROUND**

¶2        Gary Standard was walking down a sidewalk along Gilbert Road in March 2016 when he was stopped by Officers Rubio and Naehrbass of the City of Mesa Police Department. The officers were responding to a report of an incident involving Standard that led officers to believe he was in need of assistance for his own safety.

¶3        While speaking with Standard, he told the police officer he wanted "to know who the sheriff [wa]s" in order to find out if there was any "background on [him]" and asked the officers if they could "look that up for [him]."

¶4        Struggling to understand the request and finding Standard "extremely delusional," the officers explained that they were there "to help [him]" but that the Mesa police—not a sheriff's office—had jurisdiction in Mesa. They told Standard that he was not supposed to be walking around "without proper supervision" and explained they had to take him back home "to figure things out." Becoming slightly agitated, Standard asked the officers to call "the sheriff's office." When they refused, Standard turned away and began walking down the sidewalk.

¶5        Both Officers followed. Reaching out to Standard's arm, Officer Rubio quickly but calmly instructed, "No, no, no, I can't have you

walking away." In response, Standard accelerated to a full sprint, bolting down the sidewalk away from the officers. The officers gave chase, quickly catching him and pulling him down to the ground in an adjacent yard.

**¶6** Lying on his back, Standard writhed, and the Officers struggled to gain control. They commanded him to "stay put" and, repeatedly, to "stop it." In the initial melee, Standard reached up into the air, scratching Officer Naehrbass's neck, and dislodging his microphone. At one point, Officer Rubio employed a "crucifix" hold—wrapping his legs around one of Standard's arms and his arms around the other. Finally, yelling, "stop it, you're in detainment!" and "get on your stomach!" the Officers managed to roll Standard over, securing him in handcuffs. In the course of the arrest, both officers sustained injuries: Officer Naehrbass had a two or three inch scratch on his neck as well as a smaller scratch on his arm, and Officer Rubio had a "scuffed" knee.

**¶7** For inflicting the officers' injuries, the State initially charged Standard with two counts of aggravated assault, which were later reduced to misdemeanors. *See* A.R.S. § 13-1203(A)(1), (B) (class 1 misdemeanor assault). The superior court twice referred the matter for Rule 11 competency proceedings, initially finding Standard incompetent but restorable. Over a year later, the court, upon stipulation for submission of Standard's competency based upon the written reports of the mental competency doctors, found Standard competent.

**¶8** Standard's counsel filed two pre-trial motions. His motion to suppress evidence of his assaultive conduct during the arrest was denied. His motion in limine to exclude discussion of the earlier incident was granted.

**¶9** Standard waived his right to a jury trial. After a bench trial, the superior court found him guilty on Count 2, which concerned Officer Naehrbass's injuries. Finding insufficient evidence that Standard intentionally or knowingly caused Officer Rubio's scuffed knee, however, the superior court acquitted Standard on Count 1. At sentencing, the superior court suspended the imposition of sentence and placed Standard on supervised probation for six months. Standard timely appealed.

**¶10** After a thorough review of the record, we find no reversible error. *Clark*, 196 Ariz. at 541, ¶ 50. The record reflects Standard was present and represented by counsel at all critical stages of the proceedings against him.

¶11 Additionally, the evidence presented supports the conviction. *See* A.R.S. § 13-1203(A)(1), (B) (defining class 1 misdemeanor of assault as "intentionally [or] knowingly . . . causing any physical injury to another person"). Officer Naehrbass testified that Standard was "very aggressive" during the struggle, "swinging his arms, and trying to pull away from" the officers. Officer Rubio testified that Standard had tried to bite him. Officer Naehrbass testified that Standard reached up and "scratched [his] neck," and he described Standard as being "in complete control" when he did so. Footage from Officer Rubio's body camera showed Standard reaching up and dislodging Officer Naehrbass's microphone, which was mounted on the officer's shoulder, near his neck. In addition, the State presented photographic evidence and testimony that Standard had "very long," "very unkempt" fingernails.

¶12 Finally, the sentence imposed falls within the range permitted by law. *See* A.R.S. § 13-707(A)(1) (maximum of six months imprisonment for Class 1 misdemeanor). As supported by the record, these proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and Standard's constitutional and statutory rights. Therefore, we affirm Standard's conviction and sentence.

¶13 Unless defense counsel finds an issue that may be appropriately submitted to the Arizona Supreme Court, his obligations are fulfilled once he informs Standard of the outcome of this appeal and his future options. *State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Standard has 30 days from the date of this decision to proceed, if he wishes, with a pro per motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED:  AA