NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DANIEL JOSEPH CAMPBELL, *Appellant*.

No. 1 CA-CR 21-0018
FILED 2-8-2022

Appeal from the Superior Court in Mohave County
No. S8015CR201901850
The Honorable Derek S. Carlisle, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Mohave County Legal Advocate's Office, Kingman
By Jill L. Evans
*Counsel for Appellant*

------------------------

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Brian Y. Furuya joined.

------------------------

**B R O W N,** Judge:

¶1        This timely appeal is presented to us pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Defense counsel has searched the record on appeal and advised us there are no meritorious grounds for reversal. Campbell was given the opportunity to file a supplemental brief but did not do so. Our obligation is to review the entire record for reversible error, *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999), viewing the evidence in the light most favorable to sustaining the conviction and resolving all reasonable inferences against Campbell, *State v. Guerra*, 161 Ariz. 289, 293 (1989).

¶2        Early in the evening on November 20, 2019, Campbell called the victim's friend, A.T., who lived in Minnesota. Campbell repeatedly screamed that the victim is "dead" and that she "overdosed." Campbell would not tell A.T. where he and the victim were located so when Campbell hung up, she notified law enforcement officials, who were able to determine where Campbell's cell phone was located. When sheriff's deputies arrived at the specified location, they found "a white van that was pulled over on the side of the road."

¶3        As they approached the van, the two deputies saw a man and a woman covered with blankets laying in the back seat. After Deputy Kjellberg knocked several times, Campbell opened a door and told the deputies the victim had overdosed. The victim did not respond when Deputy Kjellberg asked whether she was okay. After reluctantly exiting the van, Campbell explained that the victim had purchased drugs the day before and she was not feeling well that day, so they pulled off the road. Campbell also said the victim had an "opioid problem" and that he had attempted to revive her using "mouth to mouth." Soon thereafter, a paramedic who arrived at the scene confirmed that the victim had no cardiac activity and "declared her deceased."

¶4        After an autopsy report revealed that the victim did not die from an overdose, the State charged Campbell with second-degree murder.

¶5         At trial, A.T. testified she last saw the victim and Campbell in August 2019, as they were planning to go on a long road trip. She also testified that the Friday before the incident, Campbell texted her about the victim and stated in part his "sole purpose in life is getting even with her[.]" A detective testified that Campbell's phone records indicated Campbell did not call 911 or any other emergency response number on the day of the incident.

¶6         A certified death investigator with the Mohave County Medical Examiner's Office testified about her observations at the scene of the incident. Once she arrived, several things made her skeptical about the theory that the victim died from an overdose. For example, the investigator explained she "was confused as to why [the victim] was laying in the back of the van in the first place" with no pants on. The investigator testified that she observed bruising on the victim's eyes, lips, fingers, knuckles, left buttocks, and left armpit. She also observed the victim had vomit on her face, which was unlike a typical drug overdose.

¶7         The medical examiner testified that the cause of death was multiple blunt force injuries, with a subdural hematoma being the main cause of death. He testified that the alcohol and clonazepam in the victim's system did not contribute to the victim's death, and he was surprised no opiates were found in her blood, particularly because it was labeled as a possible overdose. The medical examiner also explained that "one of the most important findings in this case is a fractured hyoid bone[,]" which he opined is "typically associated with strangulation, being grabbed by the throat, or can also result from direct blunt trauma." He described the manner of death in his autopsy report as a "homicide."

¶8         A jury found Campbell guilty as charged, and following an aggravation hearing, determined that the State proved an aggravating circumstance—the "especially cruel manner in which the offense was committed." The trial court sentenced Campbell to the presumptive sentence of 16 years in prison and awarded him 417 days of presentence incarceration credit. Although Campbell was only entitled to credit for 416 days, we have no authority to correct the error. *See State v. Dawson*, 164 Ariz. 278, 286 (1990).

¶9         After a thorough review of the trial record, we find no reversible error. *See Clark*, 196 Ariz. at 541, ¶ 50. The record reflects Campbell participated either in person or by video from the jail and was represented by counsel at all critical stages of the proceedings against him. Campbell was not present during a discussion of the jury instructions at the

beginning of the fourth day of trial, but his presence was waived by counsel, and Campbell joined shortly after.

¶10 The evidence presented supports the conviction, and the sentence imposed falls within the range permitted by law. As far as the record reveals, these proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and Campbell's constitutional and statutory rights. Therefore, we affirm Campbell's conviction and sentence.

¶11 Unless defense counsel finds an issue that may be appropriately submitted to the Arizona Supreme Court, her obligations are fulfilled once she informs Campbell of the outcome of this appeal and his future options. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Campbell has 30 days from the date of this decision to proceed, if he wishes, with a pro per motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED: AA