NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

BOBBY LANIR HUDSON, *Appellant*.

No. 1 CA-CR 22-0316
FILED 11-21-2023

Appeal from the Superior Court in Mohave County
No. S8015CR202000515
The Honorable Douglas Camacho, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Janelle A. McEachern Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Michael S. Catlett joined.

---

**B R O W N**, Judge:

¶1        This appeal is presented to us pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Defense counsel has searched the record on appeal and advised us there are no meritorious grounds for reversal. Hudson was given the opportunity to file a supplemental brief but did not do so. Our obligation is to review the entire record for reversible error, *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999), viewing the evidence in the light most favorable to sustaining the conviction and resolving all reasonable inferences against Hudson, *State v. Guerra*, 161 Ariz. 289, 293 (1989).

¶2        On the afternoon of April 29, 2020, an Arizona Department of Public Safety ("DPS") trooper was "working Interstate 40" while using a fully-marked law enforcement vehicle. The trooper noticed a blue sports car traveling approximately 90 miles per hour (15 miles per hour above the posted speed limit) and initiated a traffic stop. After the car pulled over, the trooper noted there were two occupants. Hudson, who was sitting in the front passenger seat, gave the trooper a driver's license, a temporary Arizona registration, and insurance information, all of which were issued to "Robert Harrington." When asked about a driver's license, the driver replied that he "didn't have it with him."

¶3        The trooper had the driver exit the car, and after several minutes the trooper returned to speak with Hudson. Because the driver had no license, the trooper allowed Hudson to move into the driver's seat but instructed him not to "leave yet," and it "would just be a minute." Returning to his patrol car, the trooper could not find any records for a "Robert Harrington," even under a national search. When the trooper confronted Hudson and told him multiple times to step out of the car, Hudson slammed the door shut, immediately locked the door, and sped away. Shortly thereafter, Hudson rear-ended another vehicle with several occupants, including the driver ("A.L."), who felt pain in her hands and her back immediately after the collision and was taken to a hospital.

¶4        When the trooper reached the scene of the accident, he saw the blue sports car lying upside down in the median. After briefly hiding under a nearby truck that had pulled on to the shoulder, Hudson was apprehended.

¶5        Based on the distance between the collision and the initial traffic stop, and the time from when Hudson fled and when officers found his vehicle, Hudson was estimated to have been traveling at an average of 120 miles per hour before the accident. After he was taken into custody, Hudson confirmed his actual identity to officers. Hudson's release order, which he signed the day following his arrest, advised him of his right to be present at trial and all other proceedings and warned him that "[i]f you fail to appear the court may issue a warrant for your arrest and/or hold the trial or proceeding in your absence."

¶6        As pertinent here, the State indicted Hudson for (1) aggravated assault, a class three felony, for the injury caused to victim A.L.; (2) taking the identity of another, a class four felony; and (3) unlawful flight from a pursuing law enforcement vehicle, a class five felony. A change of plea hearing was scheduled, but Hudson failed to appear. Relying on a letter purportedly written by a behavioral health agency, defense counsel advised the court that Hudson was absent because he was in a mental health facility; however, several days later the State requested a status hearing, asserting it had just been advised that Hudson was in prison in Illinois. Hudson's counsel moved to withdraw, and the court granted the request. At a subsequent hearing, Hudson was present and informed the court he had obtained private counsel. This second attorney was allowed to withdraw a few months later, asserting Hudson was "no longer able or willing to pay." After Hudson failed to hire new counsel for several months, the court appointed the public defender's office to represent him. When Hudson did not appear at the final management conference, the court issued a warrant for his arrest.

¶7        Hudson also failed to appear on the morning scheduled for his trial. Defense counsel informed the court that she had not been able to contact him throughout her representation, and the trial proceeded in his absence. After hearing testimony from DPS officers, the occupants of the car Hudson rear-ended, and reviewing photo and video evidence, the jury found Hudson guilty on all three counts. Soon after the trial, Hudson was arrested for an unrelated incident involving the fraudulent purchase of a car.

¶8        At sentencing, Hudson was given the opportunity to speak, and the court considered the information contained in the presentence report. The court imposed mitigated, consecutive sentences of 6.5 years' imprisonment for aggravated assault and one year imprisonment for unlawful flight. As to Hudson's conviction for taking the identity of another, the court placed him on probation for four years, to begin following completion of incarceration. The court also credited Hudson with 133 days of presentence incarceration credit. Hudson timely appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

¶9        After a thorough review of the record, we find no reversible error. *Clark*, 196 Ariz. at 541, ¶ 50. Concerning the superior court's decision to try Hudson in absentia, Hudson was not present for the final management conference or either day of trial. A criminal defendant who is voluntarily absent can waive the right to be present at trial. *State v. Bolding*, 227 Ariz. 82, 88, ¶ 19 (App. 2011). A court may infer voluntary absence if the defendant had notice of the date and time of the proceeding, his right to be present, and that the proceeding would go forward in his absence. Ariz. R. Crim. P. 9.1. On appeal, we review a court's finding of voluntary absence for an abuse of discretion. *State v. Bishop*, 139 Ariz. 567, 569 (1984).

¶10       The record shows that Hudson received sufficient notice for the court to infer his absence was voluntary. In the release order Hudson signed the day following his arrest, he was advised he had the right to be present at trial, and if he failed to appear the court could conduct the trial in his absence. And though Hudson was not at the final management conference, he was present at the previous hearing during which the date and time for the final management conference *and trial* were set. Hudson likewise had the responsibility to remain in contact with his attorney, an obligation confirmed in his release paperwork. *State v. Love*, 147 Ariz. 567, 570 (App. 1985). Hudson voluntarily waived his presence at trial, and the court acted within its discretion in proceeding in his absence. *See Bishop*, 139 Ariz. at 569.

¶11       The remainder of the record reflects Hudson was present or represented by counsel at all other critical stages of the proceedings against him. The evidence presented supports the convictions, and the sentences imposed fall within the ranges permitted by law. As far as the record reveals, these proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and Hudson's constitutional and statutory rights. Accordingly, Hudson's convictions and sentences are affirmed.

**¶12** Unless defense counsel finds an issue that may be appropriately submitted to the Arizona Supreme Court, her obligations are fulfilled once she informs Hudson of the outcome of this appeal and his future options. *State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Hudson has 30 days from the date of this decision to proceed, if he wishes, with a pro per motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED: AA