NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA,
*Appellee*,

v.

CARLOS ESTAEBAN QUINONEZ,
*Appellant*.

No. 1 CA-CR 19-0622
FILED 7-14-2022

---

Appeal from the Superior Court in Coconino County
No. S0300CR201700772
The Honorable Cathleen Brown Nichols, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Obsorn Maledon, PA, Phoenix
By Timothy J. Eckstein
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Jennifer B. Campbell joined.

---

**M O R S E**, Judge:

¶1 Carlos Quinonez appeals his convictions and sentences for negligent homicide, endangerment, criminal damage, and driving under the influence. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 On a clear summer evening, Quinonez attended a friend's birthday party in Tempe. At the party, he drank three to four cups of "Jungle Juice," an alcoholic punch with the equivalent of two shots of liquor per cup. Around 1:30 a.m., Quinonez got bored and decided to drive back to his apartment in Flagstaff. According to Quinonez, he was feeling "buzz[ed]" but not "blacking out." Despite the late hour and his consumption of alcohol, Quinonez felt that he "was well enough to drive."

¶3 As Quinonez approached Flagstaff, he claims that he fell into a dreamlike state and became confused. According to him, he abruptly found himself standing in the middle of the highway with his car, stopped nearby, pointed in the wrong direction. Quinonez had no memory of how he got there. A concerned passerby slowed down and asked if he was okay. This "triggered" Quinonez into a moment of lucidity. He immediately returned to his vehicle and began driving but failed to realize he was traveling southbound in a northbound lane, between 20 and 55 miles per hour, directly into oncoming traffic.

¶4 Quinonez careened headlong into a Nissan Versa carrying four people. When the cars collided, Quinonez's vehicle "overrode" the Versa. The Versa was demolished and all four occupants were pronounced dead at the scene. Quinonez was taken to the hospital, where testing showed he had a blood alcohol concentration of about 0.083 at the time of the collision.

¶5 Later analysis showed that, five seconds before the collision, the victim's vehicle was traveling approximately 89 miles per hour. The speed limit for that stretch of highway was 75 miles per hour. An autopsy

revealed that the victim driving the vehicle ("victim-driver") had a blood alcohol concentration of 0.117.

¶6          Quinonez was charged with four counts of manslaughter, four counts of endangerment, one count of criminal damage, and two counts of driving under the influence. The superior court held an eight-day trial on Quinonez's charges. At trial, the jury was instructed that negligent homicide was a lesser included offense of manslaughter.

¶7          Quinonez testified he was not fully aware of his surroundings and noted that everything felt "like a dream" that evening. He likened his confusion that night to how he felt after he suffered concussions while biking or playing sports. Based on this testimony, Quinonez's counsel suggested he suffered a concussion and attempted to argue this was an intervening, superseding cause of the collision. The superior court rejected Quinonez's request to instruct the jury on this argument.

¶8          Quinonez attempted to introduce the victim-driver's blood alcohol concentration and the Versa's speed as evidence. But the superior court rejected that request, finding that "the victim-driver, driving in excess of the posted speed limit, was a foreseeable event that [Quinonez] should have been aware of and . . . [Quinonez] created a risk that a collision would occur with anyone driving in [that] lane [by] traveling in a wrong direction . . . ."

¶9          Separately, Quinonez asked the superior court to instruct the jury on the standard of civil negligence, noting there are differences between civil and criminal negligence. His counsel also tried to explain this to the jury during closing argument. The State objected, and the court, citing risk of jury confusion, denied the instruction and prohibited any reference to civil negligence during closing.

¶10         During closing argument, the State referenced the fact that Quinonez spoke with hospital staff and police after the collision but never mentioned his claimed "dream-like state." The State noted it was only now, two years later, that Quinonez provided this explanation. Quinonez's counsel twice objected to this argument and the court sustained the objection both times. Despite these objections, the State referenced the two-year time frame once more, without objection.

¶11         The jury acquitted Quinonez of four counts of manslaughter and one count of endangerment, but found him guilty of four counts of the lesser-included offense of negligent homicide, two counts of endangerment, one count of criminal damage, and two counts of driving

under the influence. [1] The jury also found that the negligent homicide and endangerment counts were dangerous offenses.

¶12  At sentencing, the court stated Quinonez "didn't make just one horrible decision, [he] made multiple, horrible decisions." The court noted Quinonez's youth and that he was likely not fully mentally developed. Even so, the court was disturbed by Quinonez's "horrible decision to get into [his] vehicle and start driving it in the fast lane going the wrong way." This was not "the run-of-the mill DUI case," according to the court, but rather a uniquely awful tragedy caused by Quinonez's terrible conduct. The court stated that it would be "horrible" to sentence Quinonez to concurrent terms because he "took four lives" and failing to "sentence [Quinonez] to consecutive terms, [would] feel like it's indicating that these lives don't mean as much."

¶13  Ultimately, the court sentenced Quinonez to 6 years' imprisonment on each of the four negligent homicide convictions, with each term of imprisonment running consecutively. The court also sentenced Quinonez to concurrent 2.25-year terms for his two endangerment convictions, a concurrent term of 2.5 years on his criminal damage conviction, and concurrent 46-day terms on both DUI convictions.

¶14  Quinonez moved for a new trial, which was denied. He timely appealed his convictions and sentences.

¶15  While this appeal was pending, the Arizona Supreme Court granted review in *State v. Aragón*, 249 Ariz. 573 (App. 2020). Because a decision in that case was likely to inform our decision in this case, we stayed the appeal. We also invited the parties to file supplemental briefs following the issuance of that decision. In March 2022, the Arizona Supreme Court issued its opinion, *State v. Aragón* ("*Fontes*"), 505 P.3d 657 (Ariz. 2022), and the parties subsequently filed supplemental briefs. We have jurisdiction under A.R.S. § 13-4033(A)(1), (4).

## DISCUSSION

¶16  Quinonez raises several issues on appeal. We address each in turn.

---

[1]  The court granted Quinonez's motion for directed verdict on one of the other endangerment charges.

## I.   Preclusion of Victim-Driver's Impairment and Speed.

¶17         Quinonez first argues the superior court erred by excluding evidence of the victim-driver's blood alcohol concentration and the Versa's speed. We review the exclusion of evidence for an abuse of discretion. *State v. Cooperman*, 232 Ariz. 347, 349, ¶ 7 (2013).

¶18         The superior court excluded evidence of the victim-driver's speed, remarking that "there's no evidence thus far to suggest that the victim's speed at the time of the collision was a superseding cause of the collision that would relieve the Defendant of any criminal responsibility for the offenses he's been charged with." The court similarly excluded evidence of the victim-driver's blood alcohol concentration, noting that the evidence to be presented at trial was that the victim-driver "was driving [the] vehicle clearly within [the lane], and . . . maintained that vehicle in that lane and what appears to be in the center of that lane when the collision occurred."

¶19         In *Fontes*, the Arizona Supreme Court found that the defendant was not entitled to a superseding cause jury instruction but noted that its conclusion did not preclude the admission of the contested evidence for other purposes. 505 P.3d at 663, ¶¶ 22, 24. The court also stated that it was for the superior court to determine whether the evidence may be admissible for other purposes. *Id.* at 663, ¶ 22.

¶20         Following the decision in *Fontes*, Quinonez acknowledges he was not entitled to a superseding cause instruction.[2] Quinonez argues, however, that evidence of the victim-driver's impairment and speed was admissible for other purposes and the superior court abused its discretion when it precluded that evidence solely on the basis that it did not support a superseding cause instruction. Quinonez also contends that, "[l]ike the trial court in *Fontes*, the court here must be given an opportunity to consider admissibility of this evidence for other purposes."

¶21         *Fontes* involved a special action in which the only issue was the superior court's pre-trial denial of the State's motion to preclude the defendant from raising a superseding cause defense. 505 P.3d at 659-60, ¶¶

---

[2]   In his opening brief, Quinonez also argues that he suffered a concussion during his drive, before the accident, and that concussion served as an intervening, superseding cause of the victims' deaths which entitled him to a superseding cause instruction. However, as Quinonez now acknowledges he was not entitled to a superseding cause instruction, we need not address this argument.

3-5. This case presents a different procedural posture. The case was already litigated through trial and Quinonez was provided a full opportunity to urge the admissibility of the disputed evidence before and during trial. Before trial, Quinonez's counsel argued that the State's evidence of the severity of the accident made the victim's speed relevant other than for the issue of causation. During trial, Quinonez's counsel asserted that the State had placed "speed into issue" and, following the testimony of the State's accident reconstructionist, claimed that "the State has now articulated and elicited, through this accident reconstructionist, a few things that opened the door to the victim's speed being relevant." At the superior court, Quinonez never proffered a non-causation basis for admitting evidence of the victim's impairment and explicitly disclaimed that the State had opened the door to evidence of the victim's impairment. We have a complete record before us to review the superior court's evidentiary rulings.

¶22        Quinonez argues evidence of the victim-driver's speed and impairment was admissible because the State was required to prove criminal recklessness or negligence, which both require some objective assessment of the risk and "[i]t is impossible to make that assessment without a full telling of the evidence that informed [Quinonez's] conduct." *See In re William G.*, 192 Ariz. 208, 213 n.1 (App. 1997) (noting that both statutory criminal negligence and criminal recklessness require "a 'substantial' risk and a 'gross' deviation from applicable norms").

¶23        While "the contributory negligence of the deceased is not a defense, the trier of fact may still consider the decedent's conduct when determining whether the defendant's act was criminally negligent." *State v. Shumway*, 137 Ariz. 585, 588 (1983) (citation omitted). Thus, a decedent's conduct "may be relevant" if it can "relieve the defendant of criminal responsibility." *Id.* The uncontested evidence is that the victim-driver was driving the proper direction on the highway, staying straight within her lane, when her car collided with Quinonez's Jeep traveling the wrong direction. Evidence of the victim-driver's impairment and speed does not tend to show that she caused the accident, and, at best, merely relates to her ability to avoid the collision. The victim-driver's speed and impairment cannot relieve Quinonez of liability because they were not intervening events and therefore not superseding causes. *Fontes*, 505 P.3d at 662, ¶¶ 14-16 (stating the victim's "alleged acts and omissions cannot be intervening forces because they occurred simultaneously with [the defendant's] alleged excessive speeding"). As Quinonez notes, his speed was relevant as a factor in assessing whether his actions constituted a "gross deviation from the standard of conduct that a reasonable person would observe in the situation," A.R.S. § 13-105(10)(c), (d), however, the speed of the victim-

driver, who was traveling the correct direction on the highway, is not. The trial court did not err in precluding evidence of the victim's speed and impairment on this ground.

**¶24** Quinonez also asserts the preclusion of the evidence deprived him of the "ability to effectively cross-examine the State's expert." We disagree. Quinonez does not dispute the expert's conclusion that the "Versa was traveling northbound . . . [on] I-17 when it collided with the Jeep Grand Cherokee, which was traveling southbound, wrong way, . . . [and] the jeep overrode the Nissan Versa, causing the jeep to roll, and then it came to final rest on the shoulder." And Quinonez had the opportunity to cross-examine the expert as to his qualifications, the records he reviewed regarding the collision, the methods he employed in making his report, his conclusions as to what happened in the accident, and the determination that Quinonez was traveling at "highway speeds" prior to the collision.

**¶25** Quinonez also argues that the evidence is admissible because "the State opened the door to the admission of this evidence by eliciting evidence of [Quinonez]'s speed and the road conditions . . . to explain both the force of the collision . . . and why the victim did not break or attempt to steer away from oncoming headlights." "[W]here one party injects improper or irrelevant evidence or argument, the 'door is open,' and the other party may have a right to retaliate by responding with comments or evidence on the same subject." *Pool v. Superior Court*, 139 Ariz. 98, 103 (1984). "The rule [of opening the door] is most often applied to situations where evidence adduced or comments made by one party make otherwise irrelevant evidence highly relevant or require some response or rebuttal." *Id.* at 103.

**¶26** Following the testimony of the State's accident reconstructionist, the superior court found that the State had not opened the door to the admission of evidence regarding the victim-driver's speed. Even if the State's questioning of the reconstructionist or comments about the victim-driver's ability to avoid the collision arguably opened the door to evidence of the victim-driver's speed, any error was harmless beyond a reasonable doubt. *See State v. Romero*, 240 Ariz. 503, 509, ¶ 14 (App. 2016) (noting that courts consider the probative value of the evidence "[i]n determining whether evidentiary errors are harmless"); *see also State v. Dann*, 205 Ariz. 557, 565, ¶ 18 (2003) (noting that errors are harmless if "no rational jury could find otherwise"). Quinonez admitted he was driving the wrong way on the highway and caused the collision. The victim-driver's ability to avoid the collision was not relevant and would not relieve Quinonez of liability. *See Fontes*, 505 P.3d at 662, ¶¶ 14-16; *Shumway*, 137

Ariz. at 588; *see also United States v. Martinez*, 988 F.2d 685, 702 (7th Cir. 1993) (noting that opening the door allows otherwise inadmissible evidence "only to the extent necessary to remove any unfair prejudice resulting from the original evidence").[3] Thus, "we can say, beyond a reasonable doubt, that [any] error did not contribute to or affect the verdict." *State v. Bible*, 175 Ariz. 549, 588 (1993); *see also State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006) ("We presume that the jurors followed the court's instructions.").

## II. Denial of the Civil Negligence Instruction and Closing Argument Limitations.

**¶27** Quinonez also asks us to reverse his conviction because he was not allowed to argue that his actions amounted to civil negligence, not criminal negligence. Further, he asserts the court erred by refusing to instruct the jury on the standards applied to civil negligence.

**¶28** Quinonez argues that by failing to instruct the jury on civil negligence the superior court "provided the jury with an incomplete and misleading description of the law." He points to *In re William G.* to support his claim. In *William G.*, this court noted that criminal negligence is distinguishable from civil negligence. 192 Ariz. at 213 & n.1. True enough, but the jury was properly instructed on the criminal negligence standard, and Quinonez does not argue that the instructions given were insufficient to inform the jury of the elements necessary to prove his guilt. He only claims that failing to instruct the jury on a lesser negligence standard—not at issue in this case—was misleading. But no authority mandates instructing a criminal jury on civil standards of negligence. The superior court refused to issue the civil negligence instruction because it felt it could confuse the jury. That concern was reasonable, and we cannot say that refusing the instruction was an abuse of discretion. *See State v. Musgrove*, 223 Ariz. 164, 167, ¶ 6 (App. 2009) (noting that courts should reject jury instructions that could confuse the jury).

**¶29** Similarly, the superior court did not err by prohibiting argument on the issue of civil negligence during Quinonez's summation. The superior court is "vested with great discretion in the conduct and

---

[3] Further, it is not clear how helpful the victim-driver's speed evidence would have been to Quinonez. The state's accident reconstruction expert testified at a pre-trial hearing that even if the victims had been traveling at the speed limit, the collision would have happened, and Quinonez's Jeep still would have "overrode" the Versa. Quinonez did not proffer any contradictory evidence.

control of closing argument and will not be overturned on appeal absent an abuse of discretion." *State v. Tims*, 143 Ariz. 196, 199 (1985). Other courts have recognized that prohibiting an argument may be proper when it risks confusing the jury. *See State v. Rivera*, 152 Ariz. 507, 517 (1987) (affirming court's refusal to provide a jury instruction that "had the potential to mislead or confuse the jury"); *see also Hubbard v. Commonwealth*, 413 S.E.2d 875, 882-83 (Va. 1992) (holding that civil negligence instruction "would have created confusion and would have been misleading" in an involuntary manslaughter trial). In light of the superior court's broad authority in this realm, we cannot say the limitation on Quinonez's argument was an abuse of discretion.

### III.     Quinonez's Constitutional Arguments.

**¶30**          Quinonez asserts that the superior court's denial of his jury instructions and limitation on his closing arguments collectively "demonstrate that [Quinonez's] due process and Sixth Amendment rights" were violated. As discussed *supra* ¶¶ 17-29, the superior court did not err in denying Quinonez's requested jury instructions or in limiting his argument. We reject Quinonez's constitutional arguments.

### IV.     Alleged Prosecutorial Misconduct.

**¶31**          Quinonez alleges the superior court erred in failing to grant his motion for new trial based on the prosecutor's repeated references to the fact that he had given statements to police and healthcare workers and never told those individuals about the "dream-like state" he was in at the time of the accident. In reference to Quinonez's inconsistent statements, the prosecutor thrice highlighted the fact that two-years had passed between the initial statements and Quinonez first mentioning his "dream-like state." The court twice sustained objections regarding the State's reference to the passage of time and instructed the jury to disregard two of those statements.

**¶32**          Quinonez argues the State committed prosecutorial misconduct because it improperly referenced his Fifth Amendment right to silence. "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335, ¶ 46 (2007) (citations omitted).

**¶33**          In denying Quinonez's motion for new trial, the superior court found it was wrong to have sustained objections to the prosecutor's statements during closing arguments. After reviewing the transcript, the

court concluded that the State was permissibly highlighting the witnesses' testimony "and contrasting that with what the defendant said on the stand. And the court d[id] not believe there's anything improper about doing that."

¶34　　　　We agree with the superior court.  The prosecutor did not improperly reference Quinonez's silence.  "If a defendant tells different stories during post-arrest questioning and at trial, the prosecution may properly inquire into the prior inconsistent statements, even though the prior statements involve 'silence' insofar as they omit facts contained in the later story." *State v. Guerra*, 161 Ariz. 289, 296 (1989).  The prosecutor did not commit misconduct, much less misconduct which resulted in the denial of due process.

## V.　　Alleged Sentencing Error.

¶35　　　　Finally, Quinonez argues that the superior court abused its discretion during sentencing.  "As a general rule, 'sentencing is the responsibility of the trial judge and, absent an abuse of discretion, the sentence will not be altered.'" *State v. Fillmore*, 187 Ariz. 174, 184 (App. 1996) (quoting *State v. Mincey*, 141 Ariz. 425, 445 (1984)).  A superior court's refusal to exercise the sentencing discretion provided by the legislature is, in and of itself, an abuse of discretion.  *Id.* at 185.  And we may set aside a sentence when a court abandons its responsibility to exercise discretion when imposing a sentence.  *See id.*

¶36　　　　Quinonez suggests the superior court abused its discretion during sentencing by imposing presumptive terms, ordering consecutive terms on the negligent homicide counts, issuing an overly harsh sentence, and sentencing Quinonez to significantly more time than the State recommended.

¶37　　　　At sentencing, the superior court found one aggravating factor and four mitigating factors.  Given this posture, Quinonez argues the court necessarily erred in issuing presumptive terms without further explanation.  But the court explained a presumptive sentence was still warranted because this crime was particularly harmful.  And, in any case, "[a] court need not state factors supporting a presumptive sentence." *State v. Willcoxson*, 156 Ariz. 343, 347 (App. 1987).

¶38　　　　Quinonez next asserts that the court erred when it sentenced him to consecutive sentences because the court's "sole rationale for imposing consecutive terms was that there were four victims."  Specifically, Quinonez points to the superior court's following statement: "You took four

lives. And if I don't sentence you to consecutive terms, I feel like it's indicating that these lives don't mean as much. I think it's horrible. It's a horrible thing to do, to run these concurrent . . . ." Contrary to Quinonez's assertion, this statement rebuts his claim that the court failed to exercise its discretion. The court carefully considered the information presented and determined consecutive sentences were appropriate. *See supra* ¶¶ 12-13.

**¶39** As to Quinonez's final two arguments, we reject both. He took four lives and we do not find four consecutive sentences totaling 24 years in prison to be overly harsh. And while it is true the superior court issued a sentence greater than that recommended by the State, the court was not bound by that recommendation. *See State v. Toulouse*, 122 Ariz. 275, 278 (1979). Because Quinonez has shown no abuse of discretion, we affirm Quinonez's sentences.

## CONCLUSION

**¶40** We affirm Quinonez's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA

11