NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

HAIDER H. ABDULLAH, *Appellant.*

No. 1 CA-CR 12-0297
FILED 04/24/2014

Appeal from the Superior Court in Maricopa County
No. CR2009-005708-001
The Honorable Warren J. Granville, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Janelle A. McEachern, Chandler
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Donn Kessler and Judge Michael J. Brown joined.

**G O U L D,** Judge:

**¶1** Haider H. Abdullah appeals from his convictions and sentences for two counts of first degree murder. Abdullah's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), advising this Court that after a search of the entire appellate record, no arguable ground exists for reversal. Abdullah was granted leave to file a supplemental brief *in propria persona*, and did not do so.

**¶2** Our obligation in this appeal is to review "the entire record for reversible error." *State v. Clark*, 196 Ariz. 530, 537, ¶ 30, 2 P.3d 89, 96 (App. 1999). We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031 and 13-4033(A)(1) (West 2014).[1] Finding no reversible error, we affirm.

**Facts and Procedural History[2]**

**¶3** M.M. and A.M. were both killed on April 13, 2009. The two men were not related, but they had been close friends for over 17 years. The day before his death A.M. spoke with his brother-in-law, Haider Abdullah. The two did not have a good relationship; A.M. felt that Abdullah was disrespectful of his family and forbid him from coming to A.M.'s home. A.M. and his wife, Abdullah's sister, spoke about this decision and, on April 13, 2009, she called Abdullah to tell him he was no longer welcome in her family's home.

**¶4** Abdullah was angry at this news; he called his sister back the same day and threatened to kill her husband. He drove to A.M.'s house that afternoon calling for A.M. to come out to face him. His sister told him to leave, and it appeared that he did, however, when A.M.

---

[1] Unless otherwise specified, we cite to the current version of the applicable statutes because no revisions material to this decision have occurred.

[2] We view the evidence in the light most favorable to sustaining the convictions and resulting sentences. *See State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

walked out of the house to buy cigarettes Abdullah pursued him. He fired multiple shots at A.M. and killed him in the street in front of his house.

¶5        On the same day, M.M.'s body was found by Officer Barrett in the parking lot of the Safeway located at 35th Avenue and Northern. When Officer Barrett arrived at the scene, M.M.'s car was spinning in reverse and he was slumped over the wheel; M.M. had been shot to death in his car.

¶6        After killing A.M., Abdullah drove to Tempe Town Lake and threw his gun into the lake. He then returned to his home, put some clothes in a bag, took $8,000 in cash, and began driving to Los Angeles, CA. Two days later, Abdullah was arrested in Salinas, CA and extradited to Arizona where he was arrested on April 24, 2009.

¶7        The firearms identification section of the Phoenix crime laboratory compared shell castings and bullets from the two crime scenes, A.M.'s house and the Safeway parking lot, and confirmed that the same gun was used at both shootings. The investigation revealed that Abdullah knew both A.M. and M.M. and that he had motive to kill them. The State charged Abdullah with two counts of first degree murder. The court ordered a Rule 11 evaluation to determine whether he was competent to stand trial. Based on the written reports, the court found Abdullah was competent.

¶8        Abdullah filed a motion to suppress statements he made to the police. He argued he requested a lawyer and the detectives improperly continued the interrogation in violation of his *Miranda* rights. The court reviewed a video and transcript of the interrogation and found that after Abdullah requested a lawyer the detectives did not continue to interrogate him; rather, as they gathered their papers to leave the room Abdullah made spontaneous statements. The court further found that although English was not Abdullah's first language, he demonstrated a sufficient proficiency in English throughout the interrogation to show that he understood his *Miranda* rights. The court determined that Abdullah's statements were voluntary and denied his motion to suppress.

¶9        Abdullah also moved to sever count one from count two; he argued that evidence and testimony concerning M.M.'s death would cause the jury to disbelieve his account that he killed A.M. in self defense. Abdullah reasoned the two incidents were not related to one another. However, the evidence showed that the murder of A.M. and M.M. were

related. The day before the murders, M.M., who was A.M.'s close friend, called A.M. and spoke to him about the defendant; based on this conversation, A.M. told his wife (Defendant's sister) to advise Defendant he was no longer welcome in their home. When Defendant's sister relayed this message to the Defendant the next day, Defendant became very angry and threatened to kill both M.M. and A.M. Within a few hours of this threat, both A.M. and M.M. were shot and killed.

¶10        Based on this evidence, the court determined that the evidence pertaining to M.M.'s death was relevant to show identity, intent, opportunity, and motive in A.M.'s death. The court also found that the facts related to M.M.'s death were relevant to Abdullah's claim of self-defense regarding A.M.'s death. Finally, the court found that the evidence concerning A.M.'s death was relevant to establish the identity of M.M.'s killer, as well as the existence of a common plan, intent and opportunity regarding A.M. and M.M.'s murders.

¶11        After an eight-day trial, Abdullah was convicted on both counts. The court sentenced him to two consecutive life terms with the possibility of parole after 25 years.

## Discussion

¶12        We have read and considered counsel's brief, carefully searched the entire record for reversible error and found none. *Clark*, 196 Ariz. at 541, ¶ 49, 2 P.3d at 100. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and substantial evidence supported the finding of guilt. Abdullah was present and represented by counsel at all critical stages of the proceedings. At sentencing, Abdullah and his counsel were given an opportunity to speak and the court imposed a legal sentence. With respect to Abdullah's motion to suppress, the court's factual findings support its conclusion that Abdullah's statements were voluntary and that he reinitiated the conversation with the police after requesting a lawyer. *State v. Teagle*, 217 Ariz. 17, 22, ¶ 19, 170 P.3d 266, 271 (App. 2007) (stating that "we defer to the trial court's factual findings, including findings on credibility and the reasonableness of the inferences drawn by the officer").

¶13        Counsel's        obligations        pertaining        to        Abdullah's representation in this appeal have ended. Counsel need do nothing more than inform Abdullah of the status of the appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz.

582, 584-85, 684 P.2d 154, 156-57 (1984). Abdullah shall have thirty days from the date of this decision to proceed, if he so desires, with an *in propria persona* motion for reconsideration or petition for review.

**Conclusion**

¶14        Finding no reversible error, we affirm.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh